ORIGINAL

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

OCT – 9 2015
1:33 pm

CLERK, U.S. DISTRICT COURT
By _____
Deputy

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| **KRISTIN BROWN, on behalf of herself and all others similarly situated, CHARLES AMES and thirty-one others,** | ) ) ) | |
| | ) | **No. 4:15-CV-613-A** |
| Plaintiffs, | ) | **CLASS ACTION** |
| | ) | |
| v. | ) | **Hon. John H. McBryde,** |
| | ) | **Judge Presiding** |
| **TEXAS A&M UNIVERSITY SCHOOL OF LAW and three others,** | ) ) | |
| | ) | |
| Defendants. | ) | |

### BRIEF IN SUPPORT OF
### DEFENDANTS TEXAS WESLEYAN UNIVERSITY AND FREDERICK SLABACH'S
### MOTION TO DISMISS "ORIGINAL COMPLAINT – CLASS ACTION"

**ROBERT A. BRAGALONE**
State Bar No. 02855850
*bbragalone@gordonrees.com*
**GORDON & REES LLP**
2100 Ross Avenue, Suite 2800
Dallas, Texas 75201
214-231-4660 Telephone
214-461-4053 Facsimile

**LARS L. BERG**
State Bar No. 00787072
*lars.berg@kellyhart.com*
**KELLY HART & HALLMAN LLP**
201 Main Street, Suite 2500
Fort Worth, TX 76102
817-332-2500 Phone
817-878-9280 Facsimile

*Attorneys for Defendants*
*Texas Wesleyan University*
*and Frederick Slabach*

October 9, 2015

## <u>TABLE OF CONTENTS</u>

INTRODUCTION AND SUMMARY...................................................................................1

I.  PLAINTIFFS' FAILURE TO IDENTIFY DEFENDANTS OR ALLEGE
    COGNIZABLE INJURY IN THEIR STATEMENT OF FACTS
    PREVIEW THE LEGAL INSUFFICIENCY OF THE COUNTS
    AGAINST THE WESLEYAN DEFENDANTS. ...............................................................2

II. RULE 12(B)(6) REQUIRES DISMISSAL IN THE ABSENCE OF EITHER
    COGNIZABLE CAUSES OF ACTION OR FACT ALLEGATIONS
    SUPPORTING THEM. ...................................................................................................6

III. THE FEDERAL CLAIMS AGAINST THE WESLEYAN DEFENDANTS
     – IF ANY – MAY BE INSTANTLY DISMISSED. ........................................................7

    A.  "CLAIM 1" (Lanham Act):  The Wesleyan Defendants Do Not
        Own the Trademarks in Question and the Relief Sought Does Not
        Apply to Them....................................................................................................7

    B.  "CLAIM 2" (Discrimination):  The Wesleyan Defendants Did Not
        Act Under Color of State Law, Could Not Logically Commit the
        "Discrimination" Alleged, and the "Discrimination" Alleged is Not
        Cognizable Under 42 U.S.C. §1983. ...................................................................8

        1.  The Wesleyan Defendants Have No Relationship to "Post-
            Acquisition Graduates" and Could Not Have Discriminated
            in Their Favor Against "Pre-Acquisition Graduates." ................................8

        2.  The Wesleyan Defendants at No Time Acted Under Color
            of State Law....................................................................................................9

        3.  Section 1983 Does Not Recognize Discrimination between
            Graduates Before and After an Institution's Acquisition as
            "Deprivation of Any Rights, Privileges, or Immunities
            secured by the Constitution and Laws." ...................................................10

IV. PLAINTIFFS' STATE-LAW "CLAIM 3" AND "ALTERNATIVE
    CLAIMS" ARE UNKNOWN TO TEXAS JURISPRUDENCE. ......................................11

    A.  Plaintiffs' "Alternative" Claim of Negligence against the Wesleyan
        Defendants Fails in the Absence of the Imaginary "Duties"
        Portrayed in the Complaint, and They Lack Standing to Assert
        Them...................................................................................................................11

    B.  Similarly, in "Claim 3" Plaintiffs Have Custom-Designed a
        Previously Unknown Contractual "Duty" to Fit the Tale of Their
        Unhappiness over Not Being A&M Graduates. ....................................................15

    C.  Plaintiffs Cannot Plead Breach of Good Faith and Fair Dealing
        Because Wesleyan Has No "Special Relationship" with Plaintiffs
        with Whom It Has No Contractual or Other Legal Connection............................18

D.    The Tortious Interference Claim Is a Throw-In and Should Be
      Thrown Out..........................................................................................................20

CONCLUSION ...................................................................................................................21

## TABLE OF AUTHORITIES

**CASES**

*Ad Hoc Comm. of Baruch Black & Hispanic Alumni Ass'n v. Bernard M. Baruch College*,
726 F. Supp. 522, 523, 525 (S.D.N.Y. 1989) ..................................................15

*Ad Hoc Committee v. Bernard M. Baruch College*,
726 F. Supp. 522, 523 (S.D.N.Y. 1989) ...........................................14, 15

*Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (2009) ........................................3

*Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 601-602 (7th Cir. 2009)..................17

*Brzica v. Trs. of Dartmouth College*, 791 A.2d 990 (N.H. 2002) ..................................13

*Burkett v. City of Haltom City*, 2015 U.S. Dist. LEXIS 85221, **3-4 (N.D. Tex. 2015)..............6

*Cao v. Global Motorcars of Houston, LLC*, 2014 Tex.App. LEXIS 3614,
**11-12 (Tex.App. - Houston [1st Dist.] 2014, no pet.) ....................................17

*Colli v. S. Methodist Univ.*, 2011 U.S. Dist LEXIS 92073, *8 (N.D.Tex. 2011)..........................19

*Corp. of Mercer Univ. v. Smith*, 371 S.E.2d 858, 861 (Ga. 1988) ..............................15

*Hicks v. Grp. & Pension Adm'rs, Inc.*, 2015 Tex. App. LEXIS 9395,
**35-36 (Tex. App. - Corpus Christi 2015, no pet.) ........................................20

*Humphries v. Elliott Co.*, 760 F.3d 414, 417 (5th Cir. 2014).........................................13

*H-W Tech., L.C. v. Apple, Inc.*, 2013 U.S. Dist. LEXIS 87457, *10 (N.D. Tex. 2013)................7

*In re Cadwallder*, 2007 Bankr. LEXIS 2260, *45 (Bankr. S.D. Tex. 2007)..............................13

*Jordan v. ATI Career Training Ctr.*, 2013 U.S. Dist. LEXIS 184591,
**4-5 (N.D.Tex. 2013), *confirmed and adopted*,
*and case dismissed*, by 2014 U.S. Dist. LEXIS 12023 (N.D. Tex. 2014).........................10

*Krause v. Case W. Reserve Univ.*, 1996 Ohio App. LEXIS 5771,
*9 (Ohio Ct. App., Cuyahoga County 1996)..................................................14

*Krohn v. Harvard Law School*, 552 F.2d 21, 24 (1st Cir. 1977).........................................10

*Madura v. BAC Home Loans Servicing L.P.*, 2013 U.S. Dist. LEXIS 103639,
**52-53 (M.D.Fla. 2013)..................................................................18

*McCall v. McCain*, 555 F.Supp. 1058, 1060 (N.D. Tex. 1983) .....................................5

*Progressive Transp., LLC v. Republic Nat'l Indus. of Tex., LP*,
2015 Tex. App. LEXIS 1065, *28 (Tex. App. – Texarkana 2015, no pet.) ....................16

*Rendell-Baker v. Kohn*, 457 U.S. 830 (1982).........................................................10

*Russell v. Yale Univ.*, 737 A.2d 941 (Conn. App. Ct. 1999).........................................15

*Sanders v. Dillard Univ.*, 2014 U.S. Dist. LEXIS 176888, **25-26 (E.D.La. 2014) ..................10

*Steeneck v. University of Bridgeport*, 1994 Conn. Super. LEXIS 2112,
**20-21 (Conn. Super. Ct. 1994) ..........................................................14

*Steeneck,* 1994 Conn. Super. LEXIS 2112 at **21 ..................................................................... 16

*Tex. Sales & Mktg. v. Distinctive Appliances, Inc.*, 2007 U.S. Dist. LEXIS 7364,
    **27-28 (S.D. Tex. Jan. 31, 2007)................................................................................................20

*Together 6, LLC v. Burlington Ins. Co.*, 2015 U.S. Dist. LEXIS 118700 (N.D.Tex. 2015) .........18

*United States ex rel. Spicer v. Westbrook*, 751 F.3d 354, 365 (5th Cir. 2014)..............................18

*Valley Reg'l Med. Ctr. v. Wright*, 2003 U.S. App. LEXIS 28709, *9 (5th Cir. 2003) ...................5

*Viswanathan v. Leland Stanford Jr. Univ.*, 2012 Cal. App. Unpub. LEXIS 6235,
    *36 (Cal. App. 6th Dist. 2012) ........................................................................................... 13

*Williamson-Dickie Mfg. Co. v. Apparel Ltd.*, 2015 U.S. Dist. LEXIS 75227 (N.D.Tex. 2015) ...20

*Wingfield v. Carrington Mortg. Servs.*, LLC, 2015 U.S. Dist. LEXIS 106963,
    **3-4 (N.D.Tex. 2015) .........................................................................................................3

## STATUTES

42 U.S.C. §1983 .......................................................................................................................8, 9

## Introduction and Summary

A group of attorneys claim a handful of minor inconveniences attending their status as graduates of Texas Wesleyan School of Law. Although their various requests for relief are vague and mutable from section to section, in effect they ask the Court to require everyone to recognize them as alumni of Texas A&M University School of Law. They also seek money damages from injuries that, even as they describe them, are without discernable impact.

The law is against Plaintiffs in all jurisdictions, including Texas. Plaintiffs have no cause of action against Texas Wesleyan or its President Slabach for their claimed post-acquisition discomfort. All counts against them should be dismissed.

\* \* \*

The central event in Plaintiffs' account is the acquisition by Texas A&M University ("**A&M**") of the law school assets of Texas Wesleyan University ("**Wesleyan**" or "**Wesleyan Law**," as the context requires)[1]. Throughout the Original Complaint ("**Complaint**"), Plaintiffs frequently fail to distinguish between the A&M and Wesleyan parties with respect to the wrongdoing alleged. However, since the acquisition transferred all of its law school assets to A&M (Complaint, pars. 63-64), who subsequently operated them as Texas A&M University School of Law ("**A&M Law**"), none of the post-acquisition indignities of which Plaintiffs complain could have been committed by Wesleyan or its president Slabach ("**Wesleyan Defendants**"). All of those acts were either authored or permitted by A&M Law or, in some cases, third parties.

Plaintiffs' theory against the Wesleyan Defendants is that Wesleyan owed duties of care

---

[1]     There was never a separately organized entity known as "Texas Wesleyan School of Law"; the law school was operated as an academic department of Wesleyan (*e.g.*, department of anthropology). A&M acquired Wesleyan's law school assets.

and contract to its alumni that <u>required Wesleyan <i>unilaterally</i> to "include" provisions in the asset</u> <u>purchase agreement</u> that would have prevented A&M Law from instituting (or required it to institute) policies affecting long-gone, non-party, pre-acquisition graduates. (Complaint, pars. 187, 188.)

No law in any jurisdiction recognizes any such duty; to the contrary, the cases unanimously reject the existence of any duties of an educational institution to its graduates. The duties invented by Plaintiffs cannot be anticipated by unrelated contracting parties, imposed on one party to a two-party arm's-length negotiation, or enforced by courts. The reporters are barren of cases finding university contracts with, or tort duties to, alumni. Plaintiffs' claims against the Wesleyan Defendants collapse.

Not a single Plaintiff, and no putative class of them, has a single complaint against the Wesleyan Defendants for their treatment by A&M Law or for the Wesleyan Defendants' negotiation of a contract to which they were not a party or beneficiary. As to them the entire Complaint should be dismissed.

## I. PLAINTIFFS' FAILURE TO IDENTIFY DEFENDANTS OR ALLEGE COGNIZABLE INJURY IN THEIR STATEMENT OF FACTS PREVIEW THE LEGAL INSUFFICIENCY OF THE COUNTS AGAINST THE WESLEYAN DEFENDANTS.

Rule 8(a)(2), Fed.R.Civ.P., requires that a federal complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The Complaint is neither short nor plain – it is repetitive, inconsistent in its claims for relief, and implausible in its claims of injury.

It is frequently difficult to tell which Defendants Plaintiffs are suing. They use the term "Defendants" without identifying against whom certain of the causes of action are asserted. They also freely use the term "Law School," which they define as "the academic institution

generally, without necessarily referencing its owner or name at any particular time." (Complaint, par. 41.) This hide-the-ball pleading results in uncertainty over which entities Plaintiffs claim are doing them wrong for purposes of attaching liability under their legal theories. This defect alone is enough to push the Complaint to dismissal. As the Supreme Court held in *Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (2009):

> Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. [O]nly a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]" – "that the pleader is entitled to relief." [Citations omitted.]

(*See also Wingfield v. Carrington Mortg. Servs.*, LLC, 2015 U.S. Dist. LEXIS 106963, **3-4 (N.D.Tex. 2015) (same).) The injury to plausibility and common sense represented by the Complaint suggests the reason for the abundance of authority rejecting its claims.

The confusion begins with the caption. Plaintiff Kristin Brown purports to bring this action as the sole representative of a class of Wesleyan Law alumni. However, thirty-one non-representative Plaintiffs are also listed, presumably opting out of this class in advance to pursue individual actions. Each is alleged to be a graduate of Wesleyan Law, but many graduated in the mid-1990s, and only five after 2010. (Complaint, pars. 4-35.)

The Complaint's account complains chiefly of acts, or failures to act, by A&M. A&M acquired all of the assets and operations of Wesleyan Law, including its books and records and goodwill, pursuant to an asset purchase agreement with Wesleyan. The bill of sale was dated August 12, 2013. (*Id.*, pars 63-64.) Wesleyan thereafter had no further interest in those assets, and thenceforth it operated solely as A&M Law.

The Complaint alleges that A&M's communications have attributed to itself the existence, bar-passage rates, pro bono hours, and other accomplishments of pre-acquisition Wesleyan Law graduates. (*Id.*, *e.g.*, pars. 3, 70-72, 76-78,104, 105). It accuses A&M Law of "backdating" its accreditation date to that of Wesleyan Law. (*Id.* at par. 3.) It charges that A&M achieved the approval of the American Bar Association and Southern Association of Colleges and Schools by representing that the acquisition would not work a "substantive change" in the operation of the assets as a law school in aid of a finding that the transaction "does not amount to the closure of an approved law school and the opening of a different law school" within the meaning of the applicable accreditation-transfer rules. (*Id.*, pars. 60-62.)

A&M, however, does not recognize Plaintiff Wesleyan Law graduates as A&M Law graduates. (*Id.*, *passim*.) This might seem tautological, as they are not A&M Law graduates, but Plaintiffs say that this concept has inconvenienced them. The Complaint does not identify any specific instances of any of the 32 plaintiffs having suffered injury from any of the consequences alleged to follow from being a Wesleyan Law graduate, those consequences being:

-- Not possessing a diploma with A&M Law's name on it. (*Id.*, passim.)

-- "[E]xtensive discussions" required to explain their status. (*Id.*, par. 97.)

-- "[M]ore complicated" processes to demonstrate their accredited degree. (*Id.*, par. 99.)

-- "[U]ndue complications" in being admitted in other jurisdictions. (*Id.*, pars. 152-53, 192.)

-- "[B]eing called to defend their alma mater's admissions standards." (*Id.*, pars. 154, 193.)

Plaintiffs also allege frustration at drop-down menus on various websites no longer displaying Wesleyan Law's name. However, these sites are not alleged to be owned or controlled by any Defendant to this action, but by third parties like the ABA (*id.*, pars 86, 140), the Law School

Admission Counsel (*id.*, par. 86, the latter allegedly influenced by A&M Law), and an unnamed "faculty recruiting service" (*id.*, par. 96). That is the extent of the injuries alleged.[2]

Plaintiffs do not allege that Wesleyan has failed to provided transcript, accreditation, and other information for any of its graduates promptly upon request.

Plaintiffs do not allege that a third party with Internet access could not within seconds confirm Wesleyan Law's accredited status on their respective graduation dates.

Plaintiffs do not allege that the fact that they do not possess an A&M Law diploma, or are not regarded as A&M Law alumni:

-- Has prevented any Wesleyan Law alumnus from getting a job.

-- Has prevented any Wesleyan Law alumnus from applying for or receiving a teaching position.

-- Has prevented any Wesleyan Law alumnus from applying for or being admitted to graduate school.

-- Has relegated any Wesleyan Law alumnus to accepting an inferior job, position, or graduate position, or resulted in an adverse employment action of any kind.

-- Has prevented any Wesleyan Law alumnus from gaining admission by motion to other state bars.

-- Has prevented any Wesleyan Law alumnus from becoming a judge.

-- Has resulted in any Wesleyan Law alumnus encountering a person or an

---

[2] The Fifth Circuit recognizes that the District Courts should be reluctant to spend their time on trivial injuries, especially when they result from something as inconsequential as what someone is named. *See Valley Reg'l Med. Ctr. v. Wright*, 2003 U.S. App. LEXIS 28709, *9 (5th Cir. 2003): "However, the Court finds that the principle *de minimis non curat lex* applies. *De minimis non curat lex* is well know[n] in the law and stands for the proposition that courts do not concern themselves with trifles. [Citation omitted.] * * * * Although Valley Regional never officially appointed Dr. Wright or anyone else as director, Dr. Wright acted as director during the duration of the Agreement. Furthermore, Valley Regional complied with all of its financial compensation obligations under the Agreement. To remand on the issue of whether Valley Regional was required by contract to appoint Dr. Wright as Director of Cardiac Surgery would incur a substantial and wasteful expenditure of judicial resources and attorney's fees. The issue is trivial, as Dr. Wright did not show that he sustained damage or injury as a result of not being officially appointed 'Director.'" *See also McCall v. McCain*, 555 F.Supp. 1058, 1060 (N.D. Tex. 1983) (citing maxim to enter judgment on settlement agreement over parties' squabbles: "The case at bar highlights the need for a Court to shoulder the responsibility of resolving disputes. It is lilliputian to waste the time of this Court and these lawyers on trivial matters that clients demand. Limited judicial resources must be skillfully allocated to those parties in most need of Court time").

organization which, upon presentation of easily-obtained information, refused to believe that he or she graduated from an accredited law school.

-- Has cost them money or otherwise visited financial injury on them.

And Plaintiffs do not allege that any third party has ever asked to see a Wesleyan Law graduate's diploma.

As noted, the few slights Plaintiffs claim were all alleged to be the result of post-acquisition actions (and failures to act) by A&M, not the Wesleyan Defendants. We will postpone to Section IV a discussion of Plaintiffs' theories of the Wesleyan Defendants' responsibility for their claimed difficulties.

## II. RULE 12(b)(6) REQUIRES DISMISSAL IN THE ABSENCE OF EITHER COGNIZABLE CAUSES OF ACTION OR FACT ALLEGATIONS SUPPORTING THEM.

While federal pleadings standards are liberal, they do not require the Court to accept factual allegations or legal theories that are facially untenable on a Rule 12(b)(6) motion:

> Although a complaint need not contain detailed factual allegations, the "showing" contemplated by Rule 8 requires the plaintiff to do more than simply allege legal conclusions or recite the elements of a cause of action. Thus, while a court must accept all of the factual allegations in the complaint as true, it need not credit bare legal conclusions that are unsupported by any factual underpinnings.

> Moreover, to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), the facts pleaded must allow the court to infer that the plaintiff's right to relief is plausible. To allege a plausible right to relief, the facts pleaded must suggest liability; allegations that are merely consistent with unlawful conduct are insufficient. *Id.* In other words, where the facts pleaded do no more than permit the court to infer the possibility of misconduct, the complaint has not shown that the pleader is entitled to relief. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." [*Burkett v. City of Haltom City*, 2015 U.S. Dist. LEXIS 85221, **3-4 (N.D. Tex. 2015); citations omitted.]

A plaintiff must advance a recognized legal theory, and tether it to the facts alleged. "The 12(b)(6) inquiry considers whether the complaint has alleged facts to support a cognizable legal

theory." (*H-W Tech., L.C. v. Apple, Inc.*, 2013 U.S. Dist. LEXIS 87457, *10 (N.D. Tex. 2013); citation omitted.)

With respect to the Wesleyan Defendants, the Original Complaint does not meet these standards. Dismissal should follow.

### III.    THE FEDERAL CLAIMS AGAINST THE WESLEYAN DEFENDANTS – IF ANY – MAY BE INSTANTLY DISMISSED.

The first question is: Are "Claim 1" (Lanham Act trademark claim) and "Claim 2" (Section 1983 "discrimination" claim) even brought against Wesleyan?  The headings do not reveal which Defendants Plaintiffs are targeting here, and each text uses the confusing term "Law School," which according to the Complaint could mean either Wesleyan or A&M.  So we must address them here.  Neither claim is viable against the Wesleyan Defendants.

### A.    "CLAIM 1" (Lanham Act):  The Wesleyan Defendants Do Not Own the Trademarks in Question and the Relief Sought Does Not Apply to Them.

Although no trademark-related relief appears in the "Prayer for Relief" (Complaint, par. 197), this count asks the Court to issue a rather vague "declaration that the Law School treat Pre-Acquisition Graduates just as it does post-acquisition graduates, particularly with regard to the Law School's marks and duties of the Law School with respect to all its graduates." (*Id.*, par 104; see also par. 43.)  Paragraph 107 identifies a target but is even more vague, asking the Court

> to declare that [A&M Law] cannot claim the work and accomplishments of Plaintiffs and then deny that they are graduates.  Plaintiffs ask the Court to issue a declaration that puts explicit terms to the special relationship and duties between educational institution and its graduates, or at the least, require [A&M Law] to treat all of its graduates from the accreditation date of 1994 to present with the same ability to obtain diplomas or any other benefit of graduation, including, but not limited to, the use of [A&M Law's] name when filling out various third-party forms found in a typical legal career.

Plaintiffs do not describe the "explicit terms" they the Court to compose.  How this claim for relief arises under the trademark laws is also mysterious.  Perhaps Plaintiffs' intention appears

in the title of "Claim 1": "Declaratory Judgment (Non-Infringement and License of Trademark)," although neither is mentioned in the "Prayer for Relief" or Paragraph 107.

No matter how "Claim 1" is parsed, it is certain that the Wesleyan Defendants do not own, control, license, or have any rights whatsoever in any A&M trademarks. (*Id.*, pars 80-82, 104). They cannot enforce the marks in question against Plaintiff, are not alleged to have threatened to do so, and are legally incapable of affording Plaintiffs any relief from an A&M infringement claim – or whatever it is they are requesting – on this "Claim 1," so the declaration(s?) sought are nonsensical as to the Wesleyan Defendants.

If "Claim 1" can possibly be read to target the Wesleyan Defendants, it must be dismissed as to them.

## B. "CLAIM 2" (Discrimination): The Wesleyan Defendants Did Not Act Under Color of State Law, Could Not Logically Commit the "Discrimination" Alleged, and the "Discrimination" Alleged is Not Cognizable Under 42 U.S.C. §1983.

Again: Paragraph 109 asks for declaratory relief, damages, and punitive damages against "the named Defendants." (*See also id.*, pars. 121 and 122, seeking monetary and other relief against "Defendants.") Thus, no matter how unlikely it is that this count is aimed at them, the Wesleyan Defendants are compelled to respond.

### 1. The Wesleyan Defendants Have No Relationship to "Post-Acquisition Graduates" and Could Not Have Discriminated in Their Favor Against "Pre-Acquisition Graduates."

This claim also fails against the Wesleyan Defendants on its face. The Original Complaint notes the complete acquisition of Wesleyan's law school assets by Texas A&M. (*Id.*, pars. 63-64.) The Wesleyan Defendants are not alleged to, and did not, have any relationship to graduates of A&M Law after that point. Since the Wesleyan Defendants are not alleged to have favored (and at all times have been logically incapable of favoring) post-acquisition graduates in

any way (by, for example, granting them an A&M Law diploma, allowing them to claim A&M Law alumni status, other items of which Plaintiffs complain), it follows that they have not discriminated <u>against</u> Plaintiffs as <u>pre</u>-acquisition graduates. The Original Complaint fails to allege the most basic facts of unequal treatment or other constitutional or statutory breach to support §1983 liability against the Wesleyan Defendants.

    2.    <u>**The Wesleyan Defendants at No Time Acted Under Color of State Law.**</u>

42 U.S.C. §1983 provides, in relevant part:

> Every person who, <u>under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia</u>, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of <u>any rights, privileges, or immunities secured by the Constitution and laws</u>, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. [Emphases supplied.]

Texas Wesleyan is a private university. None of the activities in which it is alleged to have engaged – those related to the sale of assets to Texas A&M – have about them the indicia of state action. The Complaint does not allege (nor could it): that state property was used; that any function normally performed by the state was implicated; that the transaction or contract were regulated by the state; that Wesleyan's action in negotiating the contract was funded by the state; or that the Wesleyan activities alleged were somehow "attributable" to the state. Section 1983 actions have been repeatedly dismissed against private educational institutions on much greater school/state involvement than is found here.

> Initially, Plaintiff cannot sue the ATI Career Training Center or its employees under 42 U.S.C. § 1983. It is well-settled that Section 1983 affords redress only for conduct committed by a person or entity acting under color of state law - it does not ordinarily involve conduct of a private citizen or corporation. See *Thibodeaux v. Bordelon*, 740 F.2d 329, 332-33 (5th Cir. 1984). * * * "<u>Our courts have decided cases involving varying degrees of governmental involvement in universities ranging from federal and state grants, student loan</u>

guarantees, tax exemptions, licensing of university owned television and radio stations, etc. Quite consistently, courts have not found state action on those bases." *Allen v. Tulane* Univ., No. 92-4070, 1993 U.S. Dist. LEXIS 15641, 1993 WL 459949, at *2 (E.D. La. Nov. 2, 1993) (citing cases); see also *Blouin v. Loyola Univ.*, 506 F.2d 20, 22 (5th Cir. 1975) (declining to find "state action" by a private university where "the record does not disclose any 'nexus' between the alleged unconstitutional activity and the purported federal and state government involvement"). [*Jordan v. ATI Career Training Ctr.*, 2013 U.S. Dist. LEXIS 184591, **4-5 (N.D.Tex. 2013), *confirmed and adopted, and case dismissed,* by 2014 U.S. Dist. LEXIS 12023 (N.D. Tex. 2014); emphasis supplied.]

*See also   Sanders v. Dillard Univ.*, 2014 U.S. Dist. LEXIS 176888, **25-26 (E.D.La. 2014) (same; 12(b)(6) dismissal); *Rendell-Baker v. Kohn*, 457 U.S. 830 (1982) (substantial state funding of educational institution insufficient to characterize complained-of acts as "state action" under §1983); and *Krohn v. Harvard Law School*, 552 F.2d 21, 24 (1st Cir. 1977) (dismissing complaint; "the receipt by a private university of state financial assistance through tax exemptions and a student aid program, regulation of the university by a public accreditation council and the authority of that council to oversee university disciplinary procedures, either individually or together, were insufficient attributes of governmental involvement to render the university's disciplinary proceedings 'state action' for section 1983 purposes").

The acts alleged to have been undertaken by the Wesleyan Defendants are far more distant from state action than those found not to be "state action" in these and other authorities. Dismissal follows.

**3.      Section 1983 Does Not Recognize Discrimination between Graduates Before and After an Institution's Acquisition as "Deprivation of Any Rights, Privileges, or Immunities secured by the Constitution and Laws."**

The Complaint is silent with respect to the Constitutional right or law violated, or even that the kind of "discrimination" it alleges is federally actionable. It alleges that "there is no rational basis for the Law School" (which "Law School"?) "to differentiate between pre- and

post-acquisition graduates," but neglects to identify a Constitutional provision or federal law that forbids it. The only statutes it cites in "Claim 2" are jurisdictional and it cites no Constitutional provision whatsoever. A state actor may discriminate between vendors, fast-food outlets, or football teams, and that preference may be wholly subjective or even "irrational," but a favoring of one over another is actionable under §1983 only if the Constitution or a federal law is violated thereby. Plaintiffs have not identified any federal rights offended by the actions alleged, and Wesleyan's research has not turned up any.

Thus, there are three independent grounds to reject "Claim 2" against the Wesleyan Defendants: Plaintiff's §1983 claim against Wesleyan – if any – (1) fails to identify any discrimination Wesleyan could conceivably have engaged in; (2) is not brought against a state actor; and (3) does not allege deprivation of any right secured by the "Constitution and laws." It must be dismissed as to the Wesleyan Defendants.

## IV.   PLAINTIFFS' STATE-LAW "CLAIM 3" AND "ALTERNATIVE CLAIMS" ARE UNKNOWN TO TEXAS JURISPRUDENCE.

The only claims that can be said with any certainty to have been brought against the Wesleyan Defendants are "Claim 3" (breach of implied contract) and three "alternative claims" (breach of duty of good faith and fair dealing, negligence, and tortious interference with prospective contractual relations). Each fails.

### A.   Plaintiffs' "Alternative" Claim of Negligence against the Wesleyan Defendants Fails in the Absence of the Imaginary "Duties" Portrayed in the Complaint, and They Lack Standing to Assert Them.

The "duty" Plaintiffs have alleged is immediately suspect, as it is described in several different ways:

> [A] duty of reasonable care to the Pre-Acquisition Graduates to ensure that the juris doctor degrees issued by [Wesleyan Law] prior to the acquisition by [A&M] would retain their value and integrity following the acquisition. [Complaint, par. 181.]

[A] duty to validate the degrees of Pre-Acquisition Graduates or provide replacement diplomas. [*Id.*, par 183.]

[The Wesleyan Defendants] failed to include a provision in the APA specifically imposing a duty on [A&M] to validate the degrees of Pre-Acquisition Graduates[.] [*Id.*, par. 187.]
[The Wesleyan Defendants] failed to take reasonable measures to ensure that Plaintiffs' degrees would retain their credibility following the acquisition[.] [*Id.,* par. 188.]

It is Plaintiff's theory, here and elsewhere, that "[t]his easily could have been effected by including an additional provision in the Asset Purchase Agreement." (*Id.*)

These duties are unknown to Texas law; indeed, to law anywhere.

We'll get to the authorities in a moment, but first we respectfully invite the Court to consider what would follow if Wesleyan had simply decided to close Wesleyan Law for its own sound business reasons, an unquestionably legal act breaching no duties to alumni. Result for Plaintiffs? Much worse than their current status, as they would then possess diplomas from an institution that no longer exists in any form at all and that, arguably, failed. And yet there could not possibly be a cause of action by alumni against a University that simply decided to stop offering a particular program; to impose liability using Plaintiff's theories in those circumstances would translate into a duty on the part of a university not only to preserve all academic disciplines in perpetuity, but to do so in a way that preserves the several unmeasurable qualities demanded by Plaintiffs: "validation," "integrity," "value," and the like.

The "common sense" required of Rule 8(b) pleadings standards defeats this possibility. Wesleyan could have taken radical but entirely permissible actions that would have really damaged the value of a Wesleyan Law degree – shutting down entirely. It follows that a far more benign action – selling the assets to a highly-reputable educational institution and maintaining the enterprise as a going concern – is not actionable.

Plaintiffs' suggested way for Wesleyan to have met that duty – "inclusion" of graduate-

protective measures – is similarly contrary to common sense. <u>A party to a negotiation has no ability unilaterally to "include" any provision.</u> The law cannot and does not impose futile or impossible duties. (*Humphries v. Elliott Co.*, 760 F.3d 414, 417 (5th Cir. 2014) ("The law does not require the doing of a futile act"); (*In re Cadwallder*, 2007 Bankr. LEXIS 2260, *45 (Bankr. S.D. Tex. 2007) ("The law does not require the impossible").) Plaintiffs cannot argue that Wesleyan merely proposing inclusion of their imaginary terms would have discharged the duty; that would do them no good at all (by their lights) unless A&M agreed, which Plaintiffs cannot allege A&M was bound to do in the course of arm's-length negotiations.

However it is phrased, Plaintiff's "duty" does not exist. No duty, no breach, no tort, no liability.

There are no cases holding that a university has any kind of duty to its alumni. The leading case rejecting any such duty is *Brzica v. Trs. of Dartmouth College*, 791 A.2d 990 (N.H. 2002). In that case, Dartmouth alumni who had contributed to a capital improvement fund – rather more than Plaintiffs here are alleged to have contributed – sued the Dartmouth trustees to prevent the monies' use in a plan to eliminate same-sex sororities and fraternities. Held: No fiduciary duty to alumni existed; case dismissed. *See also Viswanathan v. Leland Stanford Jr. Univ.*, 2012 Cal. App. Unpub. LEXIS 6235, *36 (Cal.App. 6th Dist. 2012) ("Moreover, in asserting Stanford's disregard of her concerns 'over the years,' plaintiff does not provide authority for her assumption that Stanford had a duty to investigate alumni complaints as well as those of its students and employees").[3]

Alumni claims are sometimes rejected on "standing" rather than "no duty" grounds. *Steeneck v. University of Bridgeport*, 1994 Conn. Super. LEXIS 2112, **20-21 (Conn. Super. Ct.

---

[3] The Wesleyan Defendants respectfully advise the Court that unpublished California cases may not be cited in California courts pursuant to California Rule of Court 8.1115(a).

1994), is particularly relevant, because it relates to alumni charges that the university was about to undertake a course of action – acceptance of support from the Unification Church to avoid the expiration of its accreditation – alleged to diminish the complainant's degrees, much as Plaintiffs claim here:

> The issue of whether alumni have standing to challenge the actions of their alma mater has not been addressed by our Connecticut courts, However, in an action by alumnae who alleged that Yale University's procedures for treating sexual harassment violated Title IX, the Second Circuit Court of Appeals found that "graduation has mooted their claims for grievance procedures." *Alexander v. Yale University*, 631 F.2d 178, 185 (2d Cir. 1980). In an action brought by alumni alleging that a college selectively refused to grant recognition to an alumni association dedicated to the concerns of minority students, another federal court noted that "in the absence of any other factors, <u>it is apparent that, upon graduation, one may no longer look to one's alma mater for other than such things as a transcript of grades as needed,</u>" *Ad Hoc Committee v. Bernard M. Baruch College*, 726 F. Supp. 522, 523 (S.D.N.Y. 1989); see also *Hamer v. Board of Education*, 140 Ill. App. 3d 308, 488 N.E.2d 1096, 1102, 94 Ill. Dec. 849 (Ill. App. Ct. 1986) (when former high school student brought action to challenge grade policy, court said since she suffered no injury, claim was moot); *Corporation of Mercer University v. Smith*, 258 Ga. 509, 371 S.E. 2d 858 (Ga. 1988) (finding alumni, former trustees, former professor, district attorney, and donor had no standing to bring action to set aside merger). [Emphasis supplied.]

In a conclusion that is entirely at home in the present case, the *Steeneck* court wrote: "In the present case, the plaintiff alumni have <u>already received their degrees</u>, and the injuries they have allegedly suffered due to UB's <u>alleged loss of academic reputation</u> fall within the "impermissible realm of general speculation about unproven hypothetical situations." (*Id.* at *21.) *See esp. Krause v. Case W. Reserve Univ.*, 1996 Ohio App. LEXIS 5771, *9 (Ohio Ct. App., Cuyahoga County 1996):

> The incidents plaintiff references occurred <u>subsequent to her graduation</u> from CWRU's Medical School, while she was employed at Mt. Sinai. She had <u>no post-graduate contract or relationship with CWRU.</u> The purported basis for CWRU's liability for these events is the <u>claim that CWRU had some kind of unspecified special responsibility to protect its graduates,</u> subsequent to receipt of their medical school diplomas. As a matter of law, <u>there is no responsibility on the part of a medical school to protect its alumnae.</u> [Emphases supplied.]

*See also Russell v. Yale Univ.*, 737 A.2d 941 (Conn.App.Ct. 1999) (alumni donors lacked standing to object to demolition of divinity school buildings); *Ad Hoc Comm. of Baruch Black & Hispanic Alumni Ass'n v. Bernard M. Baruch College*, 726 F.Supp. 522, 523, 525 (S.D.N.Y. 1989) ("alumni groups have no standing to challenge college policies in a court of law").

Finally, the Georgia Supreme Court noted that the trial court had rejected the standing of alumni to set aside a merger between two universities in *Corp. of Mercer Univ. v. Smith*, 371 S.E.2d 858, 861 (Ga. 1988). In rejecting efforts to interfere with the transaction, the court noted: "These institutions hold a wide variety of assets, and those persons responsible for the operation of the institutions need the administrative flexibility to make the many day-to-day decisions affecting the operation of the institution, including those decisions involving the acquisition and sale of assets."

Thus, there is no duty – or, if the Court prefers, the Plaintiffs are without standing – and the negligence count falls.

## B.     Similarly, in "Claim 3" Plaintiffs Have Custom-Designed a Previously Unknown Contractual "Duty" to Fit the Tale of Their Unhappiness over Not Being A&M Graduates.

The "implied contract" count falls for the same reason. There exists no "implied contract" with alumni. "It is apparent that, upon graduation, one may no longer look to one's alma mater for other than such things as a transcript of grades as needed." (*Ad Hoc Committee v. Bernard M. Baruch College*, 726 F. Supp. 522, 523 (S.D.N.Y. 1989).) "[A] college [only] has a contractual duty to educate its undergraduates  . . .  and a duty to treat each student fairly and non-discriminatorily." (*Id.*, cited with approval in *Steeneck,* 1994 Conn. Super. LEXIS 2112 at **21.) *And see Krause, supra*, 1996 Ohio App. LEXIS 5771 at *9: Plaintiff had "no post-graduate contract or relationship with CWRU." Every single one of the education cases cited at

paragraphs 127 through 129 of the Complaint relates to the contract for educational services between a university and its attending students – none relates to alumni, much less to the post-graduation "value," "integrity," "credibility," or "validation" of a degree.

Plaintiffs show recognition of the nature of the university-student contract: "[Wesleyan Law] offered legal education to Plaintiffs for the purpose of obtaining ABA recognized juris doctor degrees." (Complaint, par. 130.) Plaintiffs allege that each got just that. Contract performed.

And after graduation? "Plaintiffs had a reasonable expectation that [Wesleyan] would preserve the integrity of the juris doctor degrees [it] issued to Plaintiffs." (Complaint, par. 132.) But this sends us back to the "duty or not" question decisively answered "not" by the cases in Subsection (A) and the first paragraph above. Any such "expectation," no matter how unlikely, could not be "reasonable" under the foregoing cases. The count fails.

It fails as well under the Texas law of implied contract. The Texas Sixth Court of Appeals recently summarized the elements of an action for breach of implied contract in *Progressive Transp., LLC v. Republic Nat'l Indus. of Tex., LP*, 2015 Tex. App. LEXIS 1065, *28 (Tex. App. – Texarkana 2015, no pet.):

> "'The elements of a contract, express or implied, are identical'; there must be an offer, an acceptance, a meeting of the minds, each party's consent to the terms, and execution and delivery of the contract with the intent that it be mutually binding." *Plotkin v. Joekel*, 304 S.W.3d 455, 476 (Tex. App. - Houston [1st Dist.] 2009, pet. denied) (quoting *Univ. Nat'l Bank v. Ernst & Whinney*, 773 S.W.2d 707, 710 (Tex. App. - San Antonio 1989, no writ)). * * * "In each instance there must be shown the element of mutual agreement which, in the case of an implied contract, is inferred from the circumstances." *Id.*; see *Angeles v. Brownsville Valley Reg'l Med. Ctr., Inc.*, 960 S.W.2d 854, 859 (Tex. App. - Corpus Christi 1997, pet. denied) ("An implied contract arises from the dealings of the parties, from which the facts show that the minds of the parties met on the terms of the contract without any legally expressed agreement thereto"). [Emphasis supplied.]

This final point is critical. "While mutual assent can be shown from the conduct of the parties, the conduct must be intentional and the actor must know or have reason to know that the other party will infer his assent from his conduct." (*Cao v. Global Motorcars of Houston, LLC*, 2014 Tex.App. LEXIS 3614, **11-12 (Tex.App. - Houston [1st Dist.] 2014, no pet.).)   And the "implied promise" must be specific and the evidence thereof explicit, agreeing to provide

> a <u>tangible</u> continuing benefit[.]  In order to establish this type of entitlement, the student must "point to an <u>identifiable contractual promise</u> that the [university] failed to honor." Absent evidence of such a <u>specific</u> promise, the court will not participate in "second-guessing the professional judgment of the University faculty on academic matters."

> The district court correctly concluded that Bissessur failed to point to any specific promise that the University made which established that Bissessur might have had an entitlement to a continuing education, or any other such entitlement. [*Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 601-602 (7th Cir. 2009) (Rule 12(b)(6) dismissal of "implied contract" claim; citations omitted; emphases supplied.]

How does Plaintiff's "implied contract" stack up under these authorities?   Plaintiffs describe their "expectations" (*i.e.,* Wesleyan to "preserve the integrity" of the degree).   But Wesleyan's?  Only the conclusory statement that its "conduct indicated" that the degree "would remain credible and recognized by third parties for as long as the Law School" (which one?) remained in existence.  Plaintiffs identify no conduct by the Wesleyan Defendants that could possibly have "indicated" that imprecise and unlikely intention for purposes of establishing a meeting of the minds necessary to sustain the cause of action.  "While we accept all well-pleaded factual allegations as true and interpret the complaint in the light most favorable to the plaintiff, '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements,' do not establish facial plausibility." (*United States ex rel. Spicer v. Westbrook*, 751 F.3d 354, 365 (5th Cir. 2014); *see also Together 6, LLC v. Burlington Ins. Co.*, 2015 U.S. Dist. LEXIS 118700 (N.D.Tex. 2015) (same; dismissing non-diverse defendant).)

Plaintiffs' allegations here highlight the deception that pervades the Complaint arising from Plaintiffs' ambiguous definition of "Law School" as "the academic institution generally, without necessarily referencing its owner or name at any particular time." (Complaint, par. 41.) Plaintiffs' claim that Wesleyan "indicated" that its degree "would remain credible and recognized by third parties for as long as <u>the Law School</u> remained in existence." (*Id.* at par. 133.) But this count is against Wesleyan only. The Complaint nowhere alleges as a fact, nor could it, that the Wesleyan Law degree was not "credible and recognized by third parties for as long as" <u>Wesleyan</u> "remained in existence," so the count fails on its face to identify any breach of Plaintiffs' invented contractual duty, and thus fails for this reason as well. If Plaintiffs intend to rely on their definition of "Law School" as <u>including</u> A&M in this phrase, then it fails again because it requires reliance on "conduct evidencing intent" of an unrelated party whose intent is irrelevant to Wesleyan's intent.

Plaintiff's "implied contract" with Wesleyan is not implied – it is entirely imaginary.

**C.     Plaintiffs Cannot Plead Breach of Good Faith and Fair Dealing Because Wesleyan Has No "Special Relationship" with Plaintiffs with Whom It Has No Contractual or Other Legal Connection.**

"Good faith and fair dealing" is a concept that is tied to the relationship between contracting parties or to fiduciary trustee/beneficiary relationships. "[T]he good faith requirement does not exist 'in the air.' Rather, it attaches only to the performance of a specific contractual obligation." (*Madura v. BAC Home Loans Servicing L.P.*, 2013 U.S. Dist. LEXIS 103639, \*\*52-53 (M.D.Fla. 2013) (applying Florida law); *see esp. Together 6, LLC v. Burlington Ins. Co.*, 2015 U.S. Dist. LEXIS 118700 (N.D.Tex. 2015) ("[T]he duty of good faith and fair dealing arises from the 'special relationship' between the insured and the insurer <u>as parties to a contract</u> that is the result of unequal bargaining power. An independent adjuster like Bridges has

no contractual relationship with the insured that would give rise to a 'special relationship' and, therefore, does not owe any duty of good faith and fair dealing to the insured"; emphasis supplied).) There being no contract relationship between the Wesleyan Defendants and Plaintiffs, much less any explicit consensual term or condition regarding preservation of the "integrity" of the degree in perpetuity, there is no performance item to which "good faith or fair dealing" can attach. It's a meaningless concept where no performance is required of the Wesleyan Defendants.

Plaintiffs recognize the essential element of a contract in Paragraph 164 of the Complaint, which explicitly acknowledges that the duty of good faith and fair dealing arises solely out of "special relationships" between parties to a limited class of <u>actual contracts</u>, such as those where one party "obtains a resulting superiority of position and influence." All of the cases cited by Plaintiffs at Paragraphs 163 and 164 assume the existence of a contract, including its one "university case" which, as with Plaintiffs' other authority, deals with the contract for educational services with an active student and not a distant graduate: *Colli v. S. Methodist Univ.,* 2011 U.S. Dist LEXIS 92073, *8 (N.D.Tex. 2011) ("the relationship between a private school and <u>its student</u> is based in contract"; decision based on "unique circumstances between Colli and SMU"; emphasis supplied). But there is no contract between Wesleyan and its long-gone graduates. Hence, Wesleyan owes no duty of good faith towards them; there exists between them no "dealing" which needs to be "fair."

In fact, outside of the fiduciary-duty context (partners, joint venturers, principal-agent, *see Tex. Sales & Mktg. v. Distinctive Appliances, Inc.,* 2007 U.S. Dist. LEXIS 7364, **27-28 (S.D. Tex. Jan. 31, 2007) (supplier-distributor contract relationship not "special")), Texas limits the concept of "good faith and fair dealing" to the insured-carrier relationship – which is, of

course, contractual. (*Williamson-Dickie Mfg. Co. v. Apparel Ltd.*, 2015 U.S. Dist. LEXIS 75227 (N.D.Tex. 2015) (rejecting application to licensor-licensee relationship).) It has also been held in Texas not to exist in the employer-employee, creditor-debtor, creditor-guarantor, or mortgagor-mortgagee context. There is no authority in any jurisdiction that the university-alumni relationship is "special" – probably because no contract exists – so as to give rise to a duty of good faith and fair dealing on the part of the institution. Dismissal of this count should follow.

### D.      The Tortious Interference Claim Is a Throw-In and Should Be Thrown Out.

Finally, Plaintiffs offer a one-paragraph claim against Wesleyan for "tortious interference with prospective contractual relations" such as those relating to refinancing student loans, seeking faculty positions, and gaining reciprocity. (Complaint, Par. 195.) It claims that Wesleyan has committed "interference with the American Bar Association's listing of accredited schools, in that now [Wesleyan Law] is not listed as an accredited school." (*Id.*)

Well – it isn't. And interfering with some third-party's "listing" is not an interference with anyone's prospective contract.

> To prevail on a claim for tortious interference with prospective business relations, a plaintiff must establish that (1) a reasonable probability existed that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result. [*Hicks v. Grp. & Pension Adm'rs, Inc.*, 2015 Tex. App. LEXIS 9395, **35-36 (Tex. App. - Corpus Christi 2015, no pet.).]

Plaintiffs have alleged none of these elements, and it would have been unwise for them to have done so under Rule 11(b), Fed.R.Civ.P. Plaintiffs have not and could not possibly allege that Wesleyan sold its law school assets with the "conscious desire" that a third-party graduate would

find a drop-down menu frustrating. This "count" is surplusage and the Court should dispose of it accordingly.

### Conclusion

Things change. Change sometimes causes inconvenience and disappointment for those not parties to the change and distant from it. Those minor results do not give rise to causes of action. They especially do not give rise to causes of action against parties – here, the Wesleyan Defendants – who are not alleged to have had anything to do with the policies claimed to so exercise Plaintiffs.

For the foregoing reasons, the Wesleyan Defendants respectfully request that the Court enter an order dismissing the entire case against them with prejudice.

DATE: October 9, 2015.

Respectfully submitted,

**ROBERT A. BRAGALONE**
State Bar No. 02855850
*bbragalone@gordonrees.com*
**GORDON & REES LLP**
2100 Ross Avenue, Suite 2800
Dallas, Texas 75201
214-231-4660 Telephone
214-461-4053 Facsimile

**LARS L. BERG**
State Bar No. 00787072
*lars.berg@kellyhart.com*
**KELLY HART & HALLMAN LLP**
201 Main Street, Suite 2500
Fort Worth, TX 76102
817-332-2500 Phone
817-878-9280 Facsimile

*Attorneys for Defendants*
*Texas Wesleyan University*
*and Frederick Slabach*

## CERTIFICATE OF SERVICE

This is to certify that on this 9th day of October 2015, a true and correct copy of the

foregoing document was served upon the following counsel of record as follows:

> *Via Email wnorred@norredlaw.com*
> Warren V. Norred
> NORRED LAW, PLLC
> 200 E. Abram, Suite 300
> Arlington, Texas 76010
> *Attorney for Plaintiffs*

_____
Lars L. Berg