ORIGINAL

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

NORTHERN DISTRICT OF TEXAS
FILED

JAN 11 2016

CLERK, U.S. DISTRICT COURT

By _____
          Deputy

| | |
|---|---|
| KRISTIN BROWN, on behalf of herself and all others similarly situated, | ) ) ) |
| CHARLES AMES and thirty others, | ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| TEXAS A&M UNIVERSITY SCHOOL OF LAW and twenty others, | ) ) ) |
| Defendants. | ) ) ) |

No. 4:15-CV-613 - A
**CLASS ACTION**

**Hon. John H. McBryde,**
**Judge Presiding**

---

### RESPONSE AND BRIEF OF WESLEYAN DEFENDANTS
### IN OPPOSITION TO
### PLAINTIFFS' "MOTION TO AMEND COMPLAINT"

---

**ROBERT A. BRAGALONE**
State Bar No. 02855850
**GORDON & REES LLP**
2100 Ross Avenue, Suite 2800
Dallas, Texas 75201
214-231-4660 Telephone
214-461-4053 Facsimile

**LARS L. BERG**
State Bar No. 00787072
**KELLY HART & HALLMAN LLP**
201 Main Street, Suite 2500
Fort Worth, TX 76102
817-332-2500 Phone
817-878-9280 Facsimile

January 11, 2015

## TABLE OF CONTENTS

INTRODUCTION AND SUMMARY ........................................................................ 1

I.    THE LIBERAL AMENDMENT POLICY OF RULE 15 DOES NOT COUNTENANCE
      SERIAL FUTILITY OR ALLOW IMMATERIAL TWEAKING TO EVADE
      DISMISSAL. ............................................................................................. 1

II.   THE PROPOSED AMENDMENTS TAKEN INDIVIDUALLY DO NOT SURVIVE A
      RULE 12(B)(6) ANALYSIS. ....................................................................... 7

      A.    New "Claim 7" Makes No Sense, Fails to Allege a Coherent
            "Third-Party Beneficiary" Claim, and Sues the Wrong Parties. ............................... 8

      B.    New "Alternative Claim" Under 42 U.S.C. §1983 States No Claim
            Against Non-State Actor Wesleyan, Is Based on a Legal Theory
            Rejected by the U.S. Supreme Court – and *Also* Makes No Sense. ..................... 10

            1.    The Wesleyan Defendants at No Time Acted Under Color
                  of State Law. ............................................................................. 10

            2.    The Wesleyan Defendants Have No Relationship to "Post-
                  Acquisition Graduates" and Could Not Have Discriminated
                  in Their Favor Against "Pre-Acquisition Graduates." ..................... 12

            3.    A §1983 Claim May Not Be Based on FERPA Violations. ...................... 14

      C.    The Rest of the Amended Allegations Against the Wesleyan
            Defendants Are All Objectionable. ........................................................... 16

            1.    Generally. .................................................................................. 16

            2.    Introductory Material. ................................................................ 16

            3.    Statement of Facts. .................................................................... 17

            4.    Claim 3:  Breach of Implied Contract. ....................................... 18

            5.    Claim 5:  Breach of Duty of Good Faith and Fair Dealing. ...................... 19

            6.    "Alternative Claim":  Negligence. ............................................. 20

            7.    "Alternative Claim":  Tortious Interference with
                  Prospective Contractual Relations ............................................. 21

CONCLUSION ...................................................................................................... 22

## TABLE OF AUTHORITIES

**CASES**

*Ashcroft v. Iqbal,* 556 U.S. 662, 678-679 ...................................................................20

*Bell Atlantic v. Twombly,* 550 U.S. 544, 555.............................................................20

*Brown v. Tex. State Univ. Sys. Bd. of Regents*, 2013 U.S.Dist. LEXIS 173818, *21
    (W.D. Tex. 2013)....................................................................................................17

*Conrad v. SIB Mortg. Corp.*, 2015 U.S.Dist. LEXIS 28349, **18-19 (N.D. Tex. Mar. 6,
    2015)........................................................................................................................9

*DeGruy v. Wade*, 586 Fed.Appx. 652, 656 (5th Cir. 2014); *Marucci Sports, L.L.C. v.
    NCAA*, 751 F.3d 368, 378-379 (5th Cir. 2014)....................................................2

*Electrostim Med. Servs. v. Health Care Serv. Corp.*, 614 Fed. Appx. 731, 740 (5th Cir.
    Tex. 2015).............................................................................................................10

*Flores v. Wind Turbine & Energy Cables Corp.*, 2015 U.S.Dist. LEXIS 66667
    (W.D.Tex. 2015)....................................................................................................3

*Geophysical Servs. v. TGS-Nopec Geophysical Servs.*, 2015 U.S.Dist. LEXIS 151441
    (S.D.Tex. 2015.......................................................................................................2

*Gonzaga Univ. v. Doe*, 536 U.S. 273, 287 (2002)......................................................17

*Hollier v. Watson*, 605 Fed. Appx. 255, 259 (5th Cir. 2015) ........................................1

*Huskin v. Union Cent. Nat'l Group*, 2011 U.S.Dist. LEXIS 49799, **4-5 (N.D.Tex.
    2011).......................................................................................................................3

*In re Online Travel Co. (OTC) Hotel Booking Antitrust Litig.*, 2014 U.S.Dist. LEXIS
    152428, *46 (N.D.Tex. 2014)................................................................................4

*Jackson v. NAACP*, 575 Fed.Appx. 256, 259 (5th Cir. 2014) .................................3, 4

*Jordan v. ATI Career Training Ctr.*, 2013 U.S. Dist. LEXIS 184591, **4-5 (N.D.Tex.
    2013), *confirmed and adopted, and case dismissed,* by 2014 U.S. Dist. LEXIS
    12023 (N.D. Tex. 2014)........................................................................................13

*Krohn v. Harvard Law School*, 552 F.2d 21, 24 (1st Cir. 1977)...............................13

*Martin's Herend Imports, Inc.*, 195 F.3d 765, 771 (5th Cir. 1999).............................2

*Marucci Sports, L.L.C. v. NCAA*, 751 F.3d 368, 378-379 (5th Cir. 2014)................2

*MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 652 (Tex. 1999)....................10

*Parish v. Frazier*, 195 F.3d 761, 764 (5th Cir. 1999)........................................5

*Rendell-Baker v. Kohn*, 457 U.S. 830 (1982) ............................................13

*Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 865 (5th Cir. 2003)........................................4

*Sanders v. Dillard Univ.*, 2014 U.S. Dist. LEXIS 176888, **25-26 (E.D.La. 2014) ..................13

*Shockley v. Svoboda*, 342 F.3d 736, (7th Cir. 2003) ..............................17

*Southern Constructors Group v. Dynalectric Co.*, 2 F.3d 606, 612 (5th Cir. 1993)......................4

*Street Star Designs, LLC v. Gregory*, 2011 U.S.Dist. LEXIS 100773 at *9 n. 10
    (S.D.Tex. 2011) ........................................................4

*Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872-73 (5th Cir. 2000)....................................2

*Tarka v. Cunningham*, 917 F.2d 890 (5th Cir 1990) ..............................17

*Whitley v. Hanna*, 726 F.3d 631, 648 (5th Cir. 2013)........................................3

*Zinante v. Drive Elec.*, L.L.C., 582 Fed. Appx. 368, 371 (5th Cir. 2014)....................................10

**STATUTES**

20 U.S.C. §§1232g ..............................................................6

42 U.S.C. § 1983 ................................................................*passim*

**RULES**

Rule 12(b)(6) ...................................................................*passim*

Rule 15(a)(1), Fed.R.Civ.P ......................................................4

## Introduction and Summary[1]

Plaintiffs' "Motion for Leave to Amend Complaint" (ECF 36; **"Plaintiffs' Motion"**) should be denied with respect to the entirety of its proposed Second Amended Complaint (attached to Plaintiffs' Motion) and in each particular respect in which it differs from the First Amended Complaint. (ECF 19.)   As shown in the Wesleyan Defendants' Motion to Dismiss and supporting Brief (ECF 28, 29) and Reply Brief filed contemporaneously with this Brief (**"Wesleyan's Motion," "Wesleyan's Brief"** and **"Reply,"** respectively), the First Amended Complaint should be dismissed in its entirety with prejudice.   The changes appearing in the Second Amended Complaint are futile to revive this failed lawsuit.

Section I of this Brief will set forth the Wesleyan Defendants' objections to the entirety of the Second Amended Complaint.   Section II will comply with the Court's Order to address the two new counts and other objectionable passages with particularity, with the reasons for opposing their addition to this case.

The case for futility and other grounds for denial is overwhelming. The Wesleyan Defendants respectfully request that the Court bring down the curtain on Plaintiffs' meritless crusade against them.[2]

## I.   THE LIBERAL AMENDMENT POLICY OF RULE 15 DOES NOT COUNTENANCE SERIAL FUTILITY OR ALLOW IMMATERIAL TWEAKING TO EVADE DISMISSAL.

"It is within the district court's discretion to deny a motion to amend if it is futile." (*Hollier v. Watson*, 605 Fed. Appx. 255, 259 (5th Cir. 2015), quoting *Stripling v. Jordan Prod.*

---

[1]   Capitalized words and phrases in this Brief have the same meaning as set forth in Wesleyan's Brief and Reply.

[2]   While the Wesleyan Defendants are urging denial of leave to file the Second Amended Complaint as to themselves (just as they are seeking dismissal of the First Amended Complaint as to themselves), they fully support the A&M Defendants' motion to dismiss the First Amended Complaint and their opposition to Plaintiffs' Motion. The Wesleyan Defendants draw this distinction because this Brief will only cover the portions of the proposed Second Amended Complaint applicable to them, and not those arguments that are unique to the A&M Defendants.

*Co., LLC*, 234 F.3d 863, 872-73 (5th Cir. 2000), quoting and citing in turn *Martin's Herend Imports, Inc.*, 195 F.3d 765, 771 (5th Cir. 1999).)  Futility of an amendment is measured by whether it would survive a Rule 12(b)(6) motion (*Marucci Sports, L.L.C. v. NCAA*, 751 F.3d 368, 378-379 (5th Cir. 2014)), which analysis includes an evaluation of whether the amending claims are frivolous:

> However, a plaintiff should be denied leave to amend a complaint if the court determines that "the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its face." 6 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1487 (2d ed. 1990); see also *Ayers v. Johnson*, 247 F. App'x 534, 535 (5th Cir. 2007) ("'[A] district court acts within its discretion when dismissing a motion to amend that is frivolous or futile.'" [citation omitted].)  [*Geophysical Servs. v. TGS-Nopec Geophysical Servs.*, 2015 U.S.Dist. LEXIS 151441 (S.D.Tex. 2015).]

Futility and frivolousness are not the only grounds for denying a motion to amend; a "dilatory motive" can also support denial (*DeGruy v. Wade*, 586 Fed.Appx. 652, 656 (5th Cir. 2014); *Marucci Sports*, above), as can a plaintiff's bad faith in misrepresenting the nature of the changes.  (*Jackson v. NAACP*, 575 Fed.Appx. 256, 259 (5th Cir. 2014) ("the district court was not required to condone such actions").)  Many cases also cite prejudice to defendants who have filed motions to dismiss as a factor to be considered on motions to amend.

> [The] potential prejudice from the amendment, also does not favor an amendment because Defendants are nine months into the case and have already gone through the time and expense of preparing a motion to dismiss. See *In re Enron Corp.*, 2007 U.S.Dist. LEXIS 4780, 2007 WL 207028, at *3 (S.D. Tex. Jan. 23, 2007) (considering time and expense of preparing a motion to dismiss as prejudicial to opponent of an untimely motion for leave to amend).  [*Huskin v. Union Cent. Nat'l Group*, 2011 U.S.Dist. LEXIS 49799, **4-5 (N.D.Tex. 2011) (considering prejudice in the context of whether to permit an untimely amendment).]

*See also Flores v. Wind Turbine & Energy Cables Corp.*, 2015 U.S.Dist. LEXIS 66667 (W.D.Tex. 2015) and *Marucci Sports*, above.  Defendants have each filed two dismissal motions.

In addition, courts look with extreme skepticism on proposed amended complaints that add no new material fact allegations but attempt to add new legal theories. (*Whitley v. Hanna*,

726 F.3d 631, 648 (5th Cir. 2013) ("First, the amended complaint adds no new substantive factual allegations").)  Indeed, Plaintiffs admit in their Motion that "<u>Plaintiffs have added no surprising facts or allegations</u>" and "<u>the facts alleged are not new</u>." (Plaintiffs' Motion, par. 5; emphases supplied.)  "As we have repeatedly held, the district court is well within its discretion to deny such attempts to present legal theories seriatim." (*Jackson v. NAACP*, 575 Fed.Appx. 256, 259 (5th Cir. 2014); footnote omitted.)  Where a motion to amend "hardly presents any new information," a "busy district court need not allow itself to be imposed upon by the presentation of theories seriatim." (*Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 865 (5th Cir. 2003); citation omitted.)  *See also Southern Constructors Group v. Dynalectric Co.*, 2 F.3d 606, 612 (5th Cir. 1993):

> Southern's attempt to amend its complaint was nothing more than an attempt to try its theories of recovery seriatim. After conditioning all of its theories of recovery on the existence of a contract – and losing conclusively on this issue at arbitration – Southern wished to amend its complaint to try a different tack by claiming that it was entitled to recovery under quasi-contract. [That claims would be tried in different fora] fails to provide a justifiable distinction for ignoring the policy against allowing litigants to assert their claims in series[.]

Put another way, "[a] litigant's failure to assert a claim as soon as he could have is properly a factor to be considered in deciding whether to grant leave to amend." (*In re Online Travel Co. (OTC) Hotel Booking Antitrust Litig.*, 2014 U.S.Dist. LEXIS 152428, *46 (N.D.Tex. 2014) (citation and internal quotation marks omitted).)  It is an even more potent policy when a dispositive motion awaits a ruling. (*Street Star Designs, LLC v. Gregory*, 2011 U.S.Dist. LEXIS 100773 at *9 n. 10 (S.D.Tex. 2011) (citing and quoting *Parish v. Frazier*, 195 F.3d 761, 764 (5th Cir. 1999), "noting that 'we more carefully scrutinize a party's attempt to raise new theories of recovery by amendment when the opposing party has filed a motion for summary judgment,' and finding no abuse of discretion in denying a motion to amend a complaint that 'would unduly prejudice the defendants and raise concerns about seriatim presentation of facts and issues'").)

From the time of the "Original Complaint – Class Action" (ECF 1) to the proposed Second Amended Complaint, there has been no discovery; no material facts known to Plaintiffs have changed or newly emerged; and no pertinent new precedents have been decided. Only one thing has changed:  Each Defendant group (A&M and Wesleyan) has filed <u>two</u> motions to dismiss.  Each provided overwhelming on-point authority for the legal insufficiency of each count of the Original Complaint, and then each count of the nearly identical First Amended Complaint Plaintiffs filed as of right (Rule 15(a)(1), Fed.R.Civ.P.).

Plaintiffs' "responses and objections" to Wesleyan's Motions (ECF 23, 35) presented <u>no contrary authority whatsoever in support of the Original or First Amended Complaints</u>.  Instead, Plaintiffs chose to moot the first Motion to Dismiss (ECF 10) by filing the barely-changed First Amended Complaint as of right (ECF 19; ECF 24 [Order denying motion to dismiss as moot]), to which the Wesleyan Defendants responded by filing a second Motion to Dismiss (ECF 28, 29 [Brief in Support]).  Because the First Amended Complaint had no more legal support for its causes of action than had the Original Complaint, Plaintiffs are attempting to repeat the tactic of avoiding the citation of any support for their causes of action by seeking leave to file a Second Amended Complaint.

Plaintiffs' Motion repeatedly and materially misrepresents the Second Amended Complaint, and threatens the Court to boot:

> (1)     Plaintiffs state that they have "amended the facts alleged and claims so as to ensure that all parties in interest can see what claims are made against what defendants[.]"  False.  Plaintiffs had already done this in the First Amended Complaint; the Second Amended Complaint adds nothing in this regard.

> (2)     Plaintiffs state that they have "added a breach of contract claim based on third-party beneficiaries [*sic*] to the sale of Texas Wesleyan University School of Law."

(Plaintiff's Motion, par. 3.)  False.  In fact, the claim in question (analyzed in detail in Section II below) is expressly <u>not</u> based on Plaintiffs being third-party beneficiaries to that sale, but, as the title of the count states, as "Third Party Beneficiary to SACS and ABA Accreditation," whatever that means.  (Second Amended Complaint, Table of Contents [Claim 7] and pars. 243ff.)  The count purports to be based on alleged "promises" made by the Defendants to SACS and ABA, not to one another, but for good reason Plaintiffs declined to characterize that theory accurately in their Motion.

(3)     Plaintiffs state that "Defendants will not be prejudiced by the amendment because their defenses do not change with the addition of the new claim[s]," and that "their motions to dismiss remain valid." (Plaintiffs' Motion, par. 5.)  False.  There are two new causes of action against Wesleyan – the aforementioned "third-party beneficiary" claim and a §1983 claim based on an entirely different species of "discrimination" (under the Family Educational Rights & Privacy Act of 1974 ("**FERPA**"), 20 U.S.C. §§1232g) – no version of either of which appears in the First Amended Complaint.  So it is false for Plaintiffs to assert, as to Wesleyan, that "defendants' prior arguments regarding plaintiffs' pre-existing §1983 claims are equally effective or ineffective, as the case may be, to plaintiffs' new claims." (*Id.*; *sic.*) Obviously, Wesleyan's Motion contains no argument relating to these previously unasserted claims; it is improper for Plaintiffs to attempt to evade further challenge by claiming to the contrary.

(4)     After claiming that Plaintiffs' counsel has the ear of "approximately 2,000 individuals in the proposed class" (*id.*, par. 8), in the very next sentence Plaintiffs "assert" that "judicial efficiency is best served by keeping a single complaint and amending it, rather than <u>multiple groups</u> of plaintiffs filing several suits on <u>the issue</u>." (*Id.*, par 9;

emphases supplied.)  So  .  .  .  if the Court doesn't grant this flawed Motion, warn Plaintiffs, it could just find itself facing "multiple groups" filing "several" more lawsuits on "this issue" – whatever "this issue" may be.  With due respect to comity, such cautions are improper argument and the threat of multiple additional lawsuits is not an acceptable ground for grant of Plaintiffs' Motion.  Respectfully, judicial economy is best served by the Court ridding its docket of Plaintiffs' pending and proposed causes of action with prejudice, which is even more likely to keep Plaintiffs' counsel's "multiple groups" at bay.

As noted, the Second Amended Complaint does not proceed from any change of circumstance in the case other than the continued onslaught of Defendants' authorities and analyses.  Realizing this time around that changing a phrase here and there and moving the parties around a bit was not going to support their motion to file yet another complaint, Plaintiffs have added two new causes of action.  We will examine these perplexing and futile claims below in detail as required by the Court's order in Section II, but we also respectfully urge on the Court that the record as a whole strongly favors denial of Plaintiffs' Motion:

-- The amendments in the Second Amended Complaint are futile under Rule 12(b)(6) standards.

-- The Second Amended Complaint alleges no new material facts; the "new" facts are surplusage to what already appears in the First Amended Complaint (*Whitley, Jackson, Rosenzweig*).

-- Plaintiffs knew every new "fact" alleged in the Second Amended Complaint when they filed their Original and First Amended Complaints (any exceptions are immaterial), but failed to allege them or their two new legal theories at that time (*Online Travel, Street Star Designs*).

-- The two new claims are both frivolous and implausible under Rule 12(b)(6) standards (*Geophysical Services*, cases cited in Wesleyan's Brief).

-- Plaintiffs materially misrepresent the Second Amended Complaint in their Motion at every turn (*Jackson*).

-- Defendants have filed two substantial and meritorious motions to dismiss, the

> second of which is pending; Plaintiffs' misrepresentations notwithstanding, if any portion of the Second Amended Complaint is filed the Wesleyan Defendants will be required to file another one to their continuing and extreme prejudice (*Huskin, Flores, Marucci Sports*).

Quite aside from the lack of merit of the changes from the First to the Second Amended Complaint, the Court would be justified in denying the Motion on these grounds alone.

## II.   THE PROPOSED AMENDMENTS TAKEN INDIVIDUALLY DO NOT SURVIVE A RULE 12(B)(6) ANALYSIS.

This Section will constitute the Wesleyan Defendants' compliance with the Court's Order of December 30, 2015, requiring Defendants to specify in their responses, "to the extent appropriate, particular language in the proposed amended pleading to which they object, providing in each instance the legal and factual basis for each objection, with citation in each instance to applicable legal authority."

This Court recently had occasion to consider a motion to dismiss an amended complaint alongside a motion to file a second amended complaint.  In denying the new amendment and dismissing the amended complaint, the Court wrote:

> More significantly, however, the court may deny leave to amend if the proposed amended complaint would be futile. A proposed amended complaint is futile if it would not survive a motion to dismiss under Rule 12(b)(6).  Under that standard, plaintiffs' proposed amended complaint is futile. The purported factual allegations are almost entirely nonsensical and fail to support whatever claims or causes of action plaintiffs intended to assert against the defendants. Granting the motion to amend would lead only to the filing by Moving Defendants of another motion to dismiss. Additionally, the court has afforded plaintiffs one opportunity to amend their pleadings, and the court assumes plaintiffs have now pleaded their best case. The court can see nothing to be gained by allowing plaintiffs to file the proposed amended complaint. [*Conrad v. SIB Mortg. Corp.*, 2015 U.S.Dist. LEXIS 28349, **18-19 (N.D. Tex. Mar. 6, 2015).]

The Court's remarks in *Conrad* provide an appropriate template for the disposition of Plaintiffs' Motion here, where the nonsensical additional counts and allegations asserted in an attempt to defeat dismissal fail to survive a Rule 12(b)(6) analysis.

**A.     New "Claim 7" Makes No Sense, Fails to Allege a Coherent "Third-Party Beneficiary" Claim, and Sues the Wrong Parties.**

As noted in Section I, Plaintiffs' new Claim 7 (Second Amended Complaint [ECF 36], pars 243-248) is styled "Breach of Contract as Third Party Beneficiary to SACS and ABA Accreditation." That Count alleges: "[Defendants] made promises to SACS and the ABA to maintain the Law School's accreditation during the acquisition" (*id.* at par. 244), among them being "that the name of the Law School after the acquisition would be 'Texas A&M University School of Law at Texas Wesleyan University.'" (*Id.* at par. 245.) This promise, it is alleged, was not kept, presumably by A&M. (*Id.* at par. 247.)

There are several problems with this Count against the Wesleyan Defendants:

(1)     It does not allege a contract between Wesleyan and SACS or the ABA, only that Plaintiffs are third-party beneficiaries to "accreditation." No contract means no third-party beneficiary to a contract.

(2)     In addition to failing to allege the necessary condition of the existence of a relevant contract, it does not allege the elements of a cause of action for breach of contract based on a third-party beneficiary theory. In Texas, "a plaintiff may assert third-party beneficiary status only when the contract contains a clear indication that the parties intended to confer a direct benefit to the plaintiff[.]" (*Electrostim Med. Servs. v. Health Care Serv. Corp.*, 614 Fed. Appx. 731, 740 (5th Cir. Tex. 2015), citing *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 652 (Tex. 1999).) As the Fifth Circuit recently noted in setting forth Texas law on the subject:

> A third-party beneficiary is "one for whose benefit the contract was made" and "not one who is benefited only incidentally by the performance of the contract." [citing *MCI*]. Texas law presumes that parties to an agreement "contracted for themselves unless it 'clearly appears' that they intended a third party to benefit from the contract." *Id.* The contract must "clearly and fully spell[] out" third-party beneficiary status. *Id.* Third-party

beneficiary status cannot be created by implication. *Id.* [*Zinante v. Drive Elec.*, L.L.C., 582 Fed. Appx. 368, 371 (5th Cir. 2014).]

There being no contract, there is no allegation of anything that "clearly and fully spells out" the identity, or any duty owed to, any third party. Nor, for that matter, do Plaintiffs allege the identification of any specific, "clear and full" extra-contractual duty.

(3)     It does not claim third-party beneficiary status arising out of the contract between Wesleyan and A&M, whose documentation, Plaintiffs admit, "state that there is no other intended beneficiary." (Second Amended Complaint, par. 246.)

(4)     It does not allege that Wesleyan had any control over what A&M decided to call the law school assets necessary to operate a law school, which, as the Second Amended Complaint admits, Wesleyan sold to A&M in their entirety. (Second Amended Complaint, par. 84.)

(5)     In alleging that "employers and other state bars cannot see the obvious connection" between Wesleyan Law and A&M Law, they are referring to "seeing" the menus on websites maintained by the ABA about which Plaintiffs frequently complain. (Second Amended Complaint, pars. 109, 138, 186, 229, 239, others.) If Plaintiffs believe that the ABA and other menus are not properly maintained, or are maintained to their detriment, their remedy is against the first party entities that maintain those menus, not Defendants.[3]

New "Claim 7" fails to state a claim upon which relief may be granted. To allow an amendment asserting it would be futile.

---

[3] Even on this Rule 12(b)(6) motion, the Court need not credit Plaintiffs' outlandish speculation "on information and belief" that "[A&M and Wesleyan] have the ability to change these menus[.]" (Second Amended Complaint, par. 131.)) (*Ashcroft v. Iqbal,* 556 U.S. 662, 678-679 (*see* Wesleyan's Brief (ECF 29), pp. 3ff) and *Bell Atlantic v. Twombly,* 550 U.S. 544, 555 ("Factual allegations must be enough to raise a right to relief above the speculative level").)

B.   **New "Alternative Claim" Under 42 U.S.C. §1983 States No Claim Against Non-State Actor Wesleyan, Is Based on a Legal Theory Rejected by the U.S.**

It is outrageous that Plaintiffs have asserted this claim against the Wesleyan Defendants. In their Original Complaint, Plaintiffs apparently asserted a §1983 claim against the Wesleyan Defendants as well as the A&M Defendants. In their first Motion to Dismiss, the Wesleyan Defendants provided abundant authority that they were not state actors and not subject to §1983 claims at all and were otherwise incapable of violating the statute. (ECF 11, pp. 8ff.) In their First Amended Complaint, Plaintiffs dropped the Wesleyan Defendants from their §1983 claim. Now, despite the fact that all of the no-state-action arguments against them in the first Motion to Dismiss apply with equal or greater force to this new "FERPA discrimination" claim, they have added the Wesleyan Defendants to this count knowing that it is fatally defective. But not only may the count not be brought against the Wesleyan Defendants, the cause of action itself fails under both common-sense logic and controlling Supreme Court precedent.

1.   **The Wesleyan Defendants at No Time Acted Under Color of State Law.**

42 U.S.C. §1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. [Emphasis supplied.]

Texas Wesleyan is a private university. None of the activities in which it is alleged to have engaged – those related to the sale of assets to Texas A&M – bears the indicia of state action. The Complaint does not allege (nor could it): that state property was used; that any function normally performed by the state was implicated; that the transaction or contract were regulated by the state; that Wesleyan's action in negotiating the contract was funded by the state;

or that the Wesleyan activities alleged were somehow "attributable" to the state.  The federal

courts have repeatedly dismissed §1983 claims against private educational institutions in the face

of much greater school/state involvement than is found here:

> Initially, Plaintiff cannot sue the ATI Career Training Center or its employees
> under 42 U.S.C. §1983. It is well-settled that Section 1983 affords redress only
> for conduct committed by a person or entity acting under color of state law - it
> does not ordinarily involve conduct of a private citizen or corporation. See
> *Thibodeaux v. Bordelon*, 740 F.2d 329, 332-33 (5th Cir. 1984).   *  *  *   "<u>Our</u>
> <u>courts have decided cases involving varying degrees of governmental</u>
> <u>involvement in universities ranging from federal and state grants, student loan</u>
> <u>guarantees, tax exemptions, licensing of university owned television and radio</u>
> <u>stations, etc. Quite consistently, courts have not found state action on those</u>
> <u>bases.</u>" *Allen v. Tulane* Univ., No. 92-4070, 1993 U.S.Dist. LEXIS 15641, 1993
> WL 459949, at *2 (E.D. La. Nov. 2, 1993) (citing cases); see also *Blouin v.
> Loyola Univ.*, 506 F.2d 20, 22 (5th Cir. 1975) (declining to find "state action" by a
> private university where "the record does not disclose any 'nexus' between the
> alleged unconstitutional activity and the purported federal and state government
> involvement").   [*Jordan v. ATI Career Training Ctr.*, 2013 U.S.Dist. LEXIS
> 184591, **4-5 (N.D.Tex. 2013), *confirmed and adopted, and case dismissed,* by
> 2014 U.S.Dist. LEXIS 12023 (N.D.Tex. 2014); emphasis supplied.]

*See also   Sanders v. Dillard Univ.*, 2014 U.S.Dist. LEXIS 176888, **25-26 (E.D.La. 2014)

(same; 12(b)(6) dismissal); *Rendell-Baker v. Kohn*, 457 U.S. 830 (1982) (substantial state

funding of educational institution insufficient to characterize complained-of acts as "state action"

under §1983); and *Krohn v. Harvard Law School*, 552 F.2d 21, 24 (1st Cir. 1977) (dismissing

complaint; "the receipt by a private university of state financial assistance through tax

exemptions and a student aid program, regulation of the university by a public accreditation

council and the authority of that council to oversee university disciplinary procedures, either

individually or together, were insufficient attributes of governmental involvement to render the

university's disciplinary proceedings 'state action' for section 1983 purposes").

   The acts alleged to have been undertaken by the Wesleyan Defendants are far more

distant from state action than those found not to be "state action" in these and other authorities.

It follows that amendment to include it in this case would be futile.

**2.** **The Wesleyan Defendants Have No Relationship to "Post-Acquisition Graduates" and Could Not Have Discriminated in Their Favor Against "Pre-Acquisition Graduates."**

This claim also fails against the Wesleyan Defendants on its face. It claims discrimination between the "Pre-Acquisition Graduates and those coming after the acquisition." (Second Amended Complaint, par. 279.)

However, the Second Amended Complaint, as noted, admits the acquisition of all operating law school assets from Wesleyan by A&M. The Wesleyan Defendants are not alleged to, and did not, have any relationship to graduates of A&M Law after that point. Since the Wesleyan Defendants are not alleged to have <u>favored</u> (and at all times have been logically incapable of favoring) <u>post</u>-acquisition graduates in any way (by, for example, granting them an A&M Law diploma, allowing them to claim A&M Law alumni status, other items of which Plaintiffs complain), it follows that they have not discriminated <u>against</u> Plaintiffs as <u>pre</u>-acquisition graduates. The Second Amended Complaint fails to allege the most basic facts of unequal treatment or other constitutional or statutory breach to support §1983 liability against the Wesleyan Defendants.

It is nearly impossible to tell exactly what "discrimination" is alleged to have taken place and how it relates to FERPA, or what's wrong with the state of affairs described by Plaintiffs:

> Thus, plaintiffs are not suing on the basis of any individual right granted by FERPA (which the Supreme Court has prohibited), but the wrongful treatment of *some* of the students in comparison to others, namely the maintenance of plaintiffs' records at [Wesleyan], an institution which has sold that accreditation and all the good will associated with that accreditation to [A&M]." [Second Amended Complaint, par 279; italicized emphasis in the original; footnoted citation omitted.]

What does this mean? What "discrimination" is it describing? What "wrongful treatment" is it talking about? Wesleyan maintains records of its students; it provides transcripts on request, which Plaintiffs apparently now admit. (*See* "Plaintiffs' Objection and Response to Defendants

Texas Wesleyan University and Frederick Slabach's Motion to Dismiss 'First Amended Complaint – Class Action'" (ECF 35), pars. 13, 17.)  It is just not possible to mine from this verbiage, or any of the other perplexing phrases in this claim, a coherent description of the wrongdoing alleged against the Wesleyan Defendants.  (We will suggest a possible – perhaps the only possible – translation in Subsection (B)(3), next below.)

We once again call the Court's attention to the Plaintiffs' use of the phrase "the Law School" to muddy the waters here.  From paragraph 278 of the Second Amended Complaint:

> Defendants have uniformly rejected the plaintiffs' request (made by more than 500 of the proposed class members in a public petition sent individually to [A&M] and [Wesleyan]) to recognize a duty to maintain plaintiffs' academic records at the Law School, and rejected plaintiffs' request to recognize that the accreditation held by [Wesleyan] when plaintiffs earned their JD is now held by [A&M].

This is deceptive in two respects.  First, by its use of the phrase "Law School" rather than any actual, really-existing Defendant in this case, Plaintiffs once again avoid alleging that Wesleyan (or A&M) has failed to observe "a duty to maintain plaintiffs' academic records," and this sentence cannot be read to make any such allegation against Wesleyan.  Second, it suggests that the serial accreditation of Wesleyan followed by A&M somehow impeaches the validity of the original Wesleyan accreditation ("when plaintiffs earned their JD") by positing that the A&M accreditation is the exact same thing as the Wesleyan accreditation, because, in Plaintiffs' portrayal, it's a single "Law School" entity before and after the acquisition.  The result (if we may presume to interpret Plaintiffs' locutions) is that presently calling it an "A&M accreditation" impugns the pre-acquisition, non-A&M – Wesleyan – accreditation and degrees (and, hence, injures Plaintiffs).  It's a rickety, made-up version of reality, not entitled to deference on a Rule 12(b)(6) motion, but Plaintiffs use it repeatedly throughout the Original and First and Second Amended Complaints.

Because there is no entity describable as "the Law School," the Wesleyan Defendants respectfully repeat their urging that no allegation depending on that phrase may be credited in a Rule 12(b)(6) analysis of either the First or Second Amended Complaint.  And when the "Law School" allegations are recognized for the nonfactual, argumentative claims that they are, the Complaints in this action collapse in their entirety.

### 3.   A §1983 Claim May Not Be Based on FERPA Violations.

Let us reexamine the question:  What exactly is Plaintiffs' §1983 claim under FERPA? Subsection (a) of that statute relates to students' and parents' right of access to a student's educational records; subsection (b) proscribes certain release of education records.

What discrimination are Plaintiffs trying to claim with respect to this statute and §1983? As noted in Subsection (B)(2) just above, the language of this "alternative" count is very difficult to understand.  But there does not seem to be any claim relating to access.  Instead, the Wesleyan Defendants' best guess is that Plaintiffs' theory is that (1) their records are maintained by Wesleyan; (2) the "Law School" is currently embodied at A&M (and is in fact the same "Law School" from which Plaintiffs' graduated -- this is critical to Plaintiffs' reasoning); therefore (3) Wesleyan's continuing post-acquisition custody of those records amounts to a wrongful "disclosure" of those records to Wesleyan, which, in addition to being a FERPA violation, discriminates against them because A&M retains the records of non-Plaintiff post-acquisition graduates.  (Again: making the slightest sense of this set of allegations requires the promotion of the fictional "Law School" to real-world entity status and imagining that Wesleyan Law grads and A&M Law grads are part of a single population as to which it is impermissible to make any distinctions, including date of graduation and entity conferring the degree.)  Whatever this all means, it is at least clear that Plaintiffs' gauzy FERPA nexus relates to disclosure violations, not

access violations. (*See* Second Amended Complaint, pars. 276-77, noting FERPA's nondisclosure provisions.)

Thus unpacked, Plaintiffs' cause of action is decisively refuted by a dead-on Supreme Court decision and subsequent confirmatory rulings.

Plaintiffs allege that "although no private right of action exists under 20 USCS §1232g, action under 42 USCS §1983 may be premised on violation of §1232g," citing *Tarka v. Cunningham*, 917 F.2d 890 (5th Cir 1990). (Second Amended Complaint, par. 56 n.2.) If one visits the Lexis publication of that case, one sees a large "Q" next to the citation, indicating that it has been questioned by subsequent authorities.

Those authorities were right to do so. In *Gonzaga Univ. v. Doe*, 536 U.S. 273, 287 (2002), the United States Supreme Court held unequivocally that "there is no question that FERPA's nondisclosure provisions fail to confer enforceable rights" that may be enforced through a §1983 action. *See also Shockley v. Svoboda*, 342 F.3d 736, (7th Cir. 2003) ("§1983 *cannot* be used to assert a FERPA violation"; emphasis in the original); *Brown v. Tex. State Univ. Sys. Bd. of Regents*, 2013 U.S.Dist. LEXIS 173818, *21 (W.D. Tex. 2013) ("the Supreme Court has established FERPA's nondisclosure provisions do not create personal rights to enforce under §1983").

That is the end of this "alternative" claim against all Defendants. And, with due respect to Plaintiffs and this Court's interest in comity: Plaintiffs knew that this claim was dead on arrival. Plaintiffs cite *Gonzaga* (Second Amended Complaint, par. 280 n. 28), suggesting that it "disallows suits premised on FERPA violations," but fail in their duty of candor to the Court to disclose that it forbids *§1983* suits premised on FERPA violations, not just direct actions.

This "alternative" claim does nothing to save this case from dismissal under Rule 12(b)(6). It is as futile as a cause of action can possibly be.

### C.     The Rest of the Amended Allegations Against the Wesleyan Defendants Are All Objectionable.

The Wesleyan Defendants read the Court's December 30 order as requiring them to address not only the two new causes of action, but any other allegations in the Second Amended Complaint to which they object.   Taking those that may arguably relate to the Wesleyan Defendants in order, and limiting their objection to material allegations:

### 1.     Generally.

The "Law School":   The Wesleyan Defendants object to all uses of the phrase "the Law School" in any of the amended text, as it does not describe a real corporate entity and does not describe allegations against the Wesleyan Defendants (or A&M Defendants).   (*See* the Wesleyan Defendants' Brief in Support of Wesleyan's Motion (ECF 29) at pp 4-5, 16.)

Surplusage:   The Wesleyan Defendants object to virtually every one of the additions to the text of the First Amended Complaint as surplusage or redundant of what has already been alleged in the First Amended Complaint.

Facts and Claims Known to Plaintiffs from the Outset:   With immaterial exceptions, all of the newly-proffered "facts" and the claims they are alleged to support have been known to Plaintiffs from the outset and could have been pleaded, if they were relevant or valid, in the Original or certainly the First Amended Complaint.   Plaintiffs cannot avoid dismissal by serial additions of redundant facts of which they have long been aware.

### 2.     Introductory Material.

Paragraph 1:   The amendment states that there are new claims for "business disparagement" and "defamation *per se*," but they do not appear in the Second Amended Complaint.

Paragraph 6:   The amendment requests that the Court act "by mandamus." (This is an

A&M-related allegation.)   However, Rule 81(b) provides:   "The writs of scire facias and mandamus are abolished."

### 3.   Statement of Facts.

Paragraph 120:  The amendment identifies a named Plaintiff who worked with a lender who could not find Wesleyan Law on an "accredited list," so she had to go to another lender. This is surplusage to Plaintiffs' existing allegations, and the allegation of having to "start over with another lender" after "hours" of working with the first lender does not describe a cognizable injury and is certainly not a classwide injury.  There is no allegation that she failed to get a loan or suffered any material damage.

Paragraph 121:   The amendment identifies a named Plaintiff who successfully filed her application with the Association of American Law Schools Faculty Appointments Register because she "could" select Wesleyan Law from the drop-down menu.   This allegation cuts wholly against Plaintiffs' theory of the case and is surplusage.

Paragraph 125:  The amendment states that Wesleyan's website "does not have a link to the Law School, or indicate the process to validate legal academic achievement."  Plaintiffs are graduates of Wesleyan Law, not of any abstract "Law School," or of A&M Law.  They have admitted that Wesleyan's website provides a link for their graduates to order transcripts.  (*See* "Plaintiffs' Objection and Response to Defendants Texas Wesleyan University and Frederick Slabach's Motion to Dismiss 'First Amended Complaint – Class Action'" (ECF 35), pars. 13, 17, the latter of which makes express reference to Wesleyan's website.)[4]

Paragraphs 129-132:   The amendments add allegations respecting the drop-down menus

---

[4]   *See* https://txwes.edu/academics/registrar/transcript-request/.  Note that it also provides a phone number if a graduate seeking a transcript has any questions.   The Court may take judicial notice of websites, especially where its authenticity is not subject to reasonable question and it has been referenced in Plaintiffs' pleadings. (*Gemstar Group United States, Inc. v. Ferragamo United States, Inc.*, 2008 U.S.Dist. LEXIS 91190, **21-22 n. 40 (S.D.Tex. 2008).)  This does not have the effect of converting a Rule 12(b)(6) motion into one for summary judgment. (*Jathanna v. Spring Branch Indep. Sch. Dist.*, 2012 U.S.Dist. LEXIS 173686, **10-11 (S.D.Tex. 2012).)

maintained by the ABA and other third parties.   Plaintiffs' drop-down menu claims have been the subject of exhaustive allegations in the First Amended Complaint; these allegations are surplusage. The amendments add the entirely conclusory allegation "on information and belief" that "[A&M and Wesleyan] have the ability to change these menus," (par. 131), but this charge, in addition to being speculative and implausible under *Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (2009) (*see* Wesleyan's Brief (ECF 29), pp. 3ff) and *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level"), is not based on any "information or belief" not known to Plaintiffs since the outset of this case and therefore cannot support leave to amend. And, as noted, in Wesleyan's Brief and Reply, Wesleyan owes no contract or tort duties to alumni beyond the provision of transcripts, so the endless complaints about menus not even maintained by Defendants are irrelevant and futile.

### 4.   Claim 3: Breach of Implied Contract.

Paragraph 165:   The amendment claims that Defendant Slabach "spoke many times to alumni and in public regarding why alumni should support the Law School's sale," although fails to describe a single instance of it. As set forth in detail in the Wesleyan's Brief (ECF 29, pp. 14ff), there is no implied or other contract between Wesleyan and its alumni; the new allegation does not even suggest that these remarks created a contract, and in any event the transaction in question did not require alumni "support." This allegation adds nothing to any element of Plaintiffs' implied contract claim.

Paragraphs 175-176:   The amendment adds allegations regarding what "every graduate of every college reasonably believes" (par. 175) or "reasonably expects" (par. 176). This is surplusage, identical in effect to paragraphs 118, 137(b) (misnumbered) on page 48, 184. In addition to being surplusage, it does not support the establishment of any of the elements of Plaintiffs' implied contract claim.

Paragraph 184:   The amendment states that Wesleyan "agents promised that the acquisition would be a benefit to the Pre-Acquisition Alumni, and sought support for the transfer."   Again, surplusage; and (even if true) it has been known to plaintiffs since before their Original Complaint and could have been pleaded at any time.   The Wesleyan Defendants have established in Wesleyan's Brief (ECF 29, pp. 15ff) that implied contracts must be based on explicit, clear terms and circumstances indicating a meeting of the minds of both parties on specific items of performance.   The amendment adds nothing to Plaintiffs' implied contract claim.

### 5.   Claim 5:  Breach of Duty of Good Faith and Fair Dealing.

Paragraphs 223, 226:  The amendment alleges that the Wesleyan Defendants "created a duty by their actions in connection with the Law School's sale to TWU [mistake – must mean A&M]," repeating the allegations that already appear many times in the First Amended Complaint regarding representations respecting what A&M would call the school.   This is surplusage.  It adds no support to Plaintiffs' claim for breach of an implied duty of good faith and fair dealing, which is a nullity for reasons set forth in Wesleyan's Brief (ECF 29, pp. 17ff).

Paragraph 228:  The amendment adds language to charge that Defendant Slabach did not "keep the promises" the Wesleyan Defendants made during the acquisition process.  Surplusage, and does not allege that any promises were made to Plaintiffs.  Again, the Wesleyan Defendants have decisively established the lack of any contractual or other duty claimed by Plaintiffs that could serve as the necessary predicate to any charge of breach of good faith and fair dealing. (Wesleyan's Brief (ECF 29, pp 17ff).)

Paragraph 229:  The amendment suggests that "a person acting in good faith and dealing fairly" could have accomplished this by "simply asking the ABA to place [Wesleyan Law] on the menus on which it was found for nearly twenty years."   This is not an allegation that Wesleyan

has not made that request, and thus adds nothing to Plaintiffs' claim. Also, this proposed way of satisfying the (non-existent) duty Plaintiffs allege has been known to them from the outset of the case. (It takes the place of the allegation that Wesleyan could have unilaterally "inserted" Plaintiff-friendly provisions in the Asset Purchase Agreement with A&M.) It is, in fact, only a legal conclusion. More importantly, there is no contract between Plaintiffs and the Wesleyan Defendants to which the duty of good faith and fair dealing could attach (see response to Paragraph 228 above).

### 6.    "Alternative Claim": Negligence.[5]

Paragraph 252: The amendment claims that the Wesleyan Defendants had a duty of care to assure that "the validation of those degrees would continue to be the simple process after the acquisition as it was before." Plaintiffs repeat this claim *ad nauseam* in the First Amended Complaint and it adds nothing to Plaintiffs' negligence claim here. That claim has been thoroughly defeated by the authorities discussed in the Wesleyan's Brief (ECF 29, pp. 9ff).

Paragraphs 254-255: These amendments are legal argument that do not add to Plaintiffs' negligence claim, and surplusage on the subject of drop-down menus. The claim is that since the Wesleyan Defendants claim Plaintiffs as alumni, it must follow that Plaintiffs "have no claim on [A&M] whatsoever" so Plaintiffs have a "duty of reasonable care" to keep its name on lists that Plaintiffs do not even maintain. The *non sequitur* is obvious and this language does not justify permitting amendment.

Paragraph 257-258: The amendment claims that the circumstances of the acquisition of the school created increased tort duties by the Wesleyan Defendants towards Plaintiffs, those duties being to "benefit" Plaintiffs by the acquisition and "not lose existing services." Since

---

[5] The Court is respectfully advised that Plaintiffs have mistakenly omitted this "Alternative" claim from the Table of Contents of the Second Amended Complaint.

there is no duty of care to alumni to begin with, there is nothing to increase, and the two "increased" duties mentioned, in particular, are non-existent under the law. In any event, the amendment does not impeach the Wesleyan Defendants' authorities that no tort duties to alumni exist. The amendment does not improve Plaintiffs' negligence claim and does not support allowing leave to file the Second Amended Complaint.

Paragraphs 261, 264: The amendment charges that Wesleyan has not "attempted to ensure" that "Texas Wesleyan School of Law" appears on the ABA list of accredited schools "as it was prior to the acquisition." This implausible charge is duplicative of the many, many other instances of claims that Defendants have not tended to the third-party drop-down menus. It adds nothing to Plaintiffs' negligence claim, and reminds us that Plaintiffs have not sought any relief from the parties that do maintain these lists and menus.

### 7. "Alternative Claim": Tortious Interference with Prospective Contractual Relations

Paragraphs 270-275: The amendment attempts to salvage Plaintiffs' cause of action against the Wesleyan Defendants. The First Amended Complaint is barren of allegations that satisfy the elements of the tort, as set forth in detail at Wesleyan's Brief (ECF 29, pp. 19ff). The amendments do not repair the claim. They allege that the Wesleyan Defendants "acted consciously" and "deliberately" to make sure its name no longer appeared on the ABA list of accredited law schools. (Par. 272.) It then alleges that "Defendants knew that their actions with regard to the sale was [sic] substantially certain to interfere with plaintiffs' ability to influence loans, obtain bar admissions in other states, and employment validation." It further alleges that these actions were "independently tortious" (an element of the cause of action) "in that they acted fraudulently, deliberately misrepresenting the impact of the Law School's acquisition to [A&M] to gain the support of the Pre-Acquisition Graduates, which aided the sale effort to the detriment

of plaintiffs." And it repeats the story of Ms. Stevens, who had to visit two lenders. (Par. 275.)

First: As *Iqbar*, *Twombly*, and many other cases teach, the Court is not required to accept nonsense and implausible claims on a Rule 12(b)(6) motion. The Second Amended Complaint requires the Court to accept that Plaintiffs can show that Wesleyan took affirmative steps to make certain that its name did not appear on a third-party's drop-down menu for the purpose of injuring its own graduates ("substantially certain").

Second, none of the acts ascribed to the Wesleyan Defendants that are alleged to have interfered with Plaintiffs' prospective contracts are independently tortious. The "fraud" and "misrepresentation" Plaintiffs complain of are not alleged to have constituted the interference – only Wesleyan's alleged conduct with respect to the drop-down menus is alleged to have contributed to their delays, and that activity is not independently tortious.

Third, for the reasons set forth in the Wesleyan Defendants' Motion and Brief and Reply Brief, even if the entire range of Plaintiffs' allegations were deemed to be aimed at hurting Wesleyan alumni, they were not "independently" tortious because they were not tortious at all.

It is astonishing that Plaintiff continues to press this "alternative" claim. The proposed amendments to this claim are the very definition of "futile."

## CONCLUSION

Each successive Complaint gets longer as Plaintiffs attempt to plead around the authority cited by Defendants they can't dispute. The result is serial-pleading whack-a-mole, with Plaintiffs dropping their failed allegations and replacing them with ever more conclusory, speculative, and implausible fact allegations and bizarre legal theories. The Second Amended Complaint has all the mortal flaws of the Original and First Amended Complaint, and piles new ones on top of them.

Neither of the two new counts states a cause of action.  The other changes to the First Amended Complaint do nothing to save the claims against the Wesleyan Defendants in the First Amended Complaint.

Accordingly:   Texas Wesleyan University and its President Frederick G. Slabach respectfully request that the Court enter an order:

(1)   denying "Plaintiffs' Motion for Leave to Amend Complaint" (ECF 36);

(2)   dismissing the "First Amended Complaint – Class Action" (ECF 19) against them with prejudice and without leave to refile as to them;

(3)   denying Plaintiffs' "Motion to Certify Class Action" (ECF 20) as moot; and

(4)   granting them other relief to which they may be entitled.

Respectfully submitted,

ROBERT A. BRAGALONE
State Bar No. 02855850
**GORDON & REES LLP**
2100 Ross Avenue, Suite 2800
Dallas, Texas 75201
214-231-4660 Telephone
214-461-4053 Facsimile

**LARS L. BERG**
State Bar No. 00787072
**KELLY HART & HALLMAN LLP**
201 Main Street, Suite 2500
Fort Worth, TX 76102
817-332-2500 Phone
817-878-9280 Facsimile

## CERTIFICATE OF SERVICE

This is to certify that on this 11th day of January, 2016, a true and correct copy of the

foregoing document was served upon the following counsel of record as follows:

*Via Email wnorred@norredlaw.com*
Warren V. Norred
NORRED LAW, PLLC
200 E. Abram, Suite 300
Arlington, Texas 76010
*Attorney for Plaintiffs*

*Via Email drew.harris@texasattorneygeneral.gov*
Drew L. Harris
Assistant Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
*Attorney for State Defendants*

Lars L. Berg

2032362_1

24