ORIGINAL

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

JAN 11 2016

CLERK, U.S. DISTRICT

By _____

Deputy

| | | |
|---|---|---|
| **KRISTIN BROWN, on behalf of herself and all others similarly situated,** | ) | |
| | ) | |
| **CHARLES AMES and thirty others,** | ) | **No. 4:15-CV-613 -A** |
| | ) | **CLASS ACTION** |
| **Plaintiffs,** | ) | |
| | ) | **Hon. John H. McBryde,** |
| v. | ) | **Judge Presiding** |
| | ) | |
| **TEXAS A&M UNIVERSITY SCHOOL OF LAW and twenty others,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

---

**REPLY BRIEF IN SUPPORT OF THE WESLEYAN DEFENDANTS'
MOTION TO DISMISS "FIRST AMENDED COMPLAINT – CLASS ACTION"[1]**

---

**ROBERT A. BRAGALONE**
State Bar No. 02855850
**GORDON & REES LLP**
2100 Ross Avenue, Suite 2800
Dallas, Texas 75201
214-231-4660 Telephone
214-461-4053 Facsimile

**LARS L. BERG**
State Bar No. 00787072
**KELLY HART & HALLMAN LLP**
201 Main Street, Suite 2500
Fort Worth, TX 76102
817-332-2500 Phone
817-878-9280 Facsimile

**DATE:  January 11, 2016**

---

[1] The Wesleyan Defendants will respond separately to "Plaintiffs' Motion for Leave to Amend Complaint" (ECF 36) as directed by the Court in its order of December 30, 2015 (ECF 37).

All capitalized terms not otherwise defined here have the same meanings assigned to them in the Wesleyan Defendants' Brief in Support of their Motion to Dismiss (ECF 29).

Plaintiffs' untimely "Objection and Response" to the Wesleyan Defendants' Motion to Dismiss the First Amended Complaint" ("**Plaintiffs' Response**" (ECF 35); "**Wesleyan's Motion**" (ECF 28, 29)) all but concedes that Wesleyan's Motion should be granted.

## I. IT IS IMPROPER FOR PLAINTIFFS TO OPPOSE DISMISSAL OF THE FIRST AMENDED COMPLAINT BY CITING THE UNFILED PROPOSED SECOND AMENDED COMPLAINT.

Plaintiffs now seek to move all their eggs from the rapidly unraveling basket of the First Amended Complaint ("**First Amended Complaint**" (ECF 19)) to a proposed Second Amended Complaint. ("Plaintiffs' Motion for Leave to Amend Complaint" with attached Second Amended Complaint ("**Second Amended Complaint**") (ECF 36).) Plaintiffs' Response refers to it frequently in opposing dismissal. (Plaintiffs' Response, pars. 1, 14, 22, 26.)

Plaintiffs' invocation of the unfiled Second Amended Complaint is improper. "[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (*United States ex rel. Wismer v. Branch Banking & Trust Co.*, 2013 U.S. Dist. LEXIS 160905, *15 (N.D.Tex. 2013), quoting from *Roebuck v. Dothan Sec., Inc.*, 515 Fed.Appx. 275, 280 (5th Cir. 2013).) It is unsurprising that Plaintiffs are promoting yet another complaint; as will be shown below, Plaintiffs' Response is largely based on mischaracterizations of the First Amended Complaint. But Plaintiffs are stuck with their current failed allegations on Wesleyan's Motion. We respectfully request that the Court ignore Plaintiffs' references to the Second Amended Complaint.

## II. THE WESLEYAN DEFENDANTS' UNANIMOUS ON-POINT AUTHORITY CONTRASTS WITH PLAINTIFFS' ZERO AUTHORITY.

Nowhere is the collapse of this case more apparent than in Plaintiffs' failure to adduce any authority in support of any of their causes of action. Plaintiffs' Response does not dispute the Wesleyan Defendants' showing that none of Plaintiffs' cases cited in the First Amended Complaint bears on the relationship between universities and alumni. Plaintiffs' Response cites no case for any of its claims suggesting the existence (or creation) of contractual or tort duties

between the university and individuals, like Plaintiffs, who have been graduated and absent for 5, 10, and even 20 or more years.

The cases cited in Wesleyan's Motion (ECF 29; *see esp.* pp. 11-14) speak with one voice: Commencement concludes the legal duties between the university and the student. Plaintiffs' Response doesn't make a dent in these precedents.

They claim that *Brzica v. Trs. of Dartmouth College*, 791 A.2d 990 (N.H. 2002), "really address[es] the use of college donations." (Plaintiffs' Response, par. 3.) It does indeed, and that circumstance cuts entirely against Plaintiffs' position here. Unlike Plaintiffs, who have not alleged that they have any donative relationship at all with Wesleyan, Dartmouth alumni alleged that they had contributed money <u>as alumni</u> to a capital campaign based on representations <u>directed to them</u>; they sued to prevent that money's use to eliminate same-sex fraternities and sororities on campus. The New Hampshire Supreme Court affirmed the trial court's ruling that no duty to alumni existed.

Plaintiffs attempt to distinguish *Brzica* by claiming that the court "point[ed] out that the alumni did not plead that the school made any promises or misrepresentations." (Plaintiffs' Response, par. 6.) False. The alumni in *Brzica* sued for misrepresentation under common law and New Hampshire's consumer protection statute. They "alleged that the Trustees made representations as to how the solicited funds from the Campaign would be allocated but remained silent" as to their plans respecting the same-sex organizations, alleging a "conspiracy of silence." (791 A.2d at 993-96.) Indeed, the university in *Brzica* was alleged to have made specific representations <u>directly to alumni</u> about what the money would be used for (*id.* at 995), a circumstance far more suggestive of wrongdoing than anything Plaintiffs have alleged here. It made no difference to the New Hampshire trial or Supreme Court, as each held that the alumni's donations in response to a fundraising campaign created no duty on the part of the University. (*Id.* at 994-95.)

In the present case, Plaintiffs have alleged neither specific representations directed to them by Wesleyan nor any post-graduate relationship with Wesleyan. It follows that *Brzica's* rejection of a duty to alumni where both are present is potent precedent against Plaintiffs.

Plaintiffs' statements regarding the leading case of *Ad Hoc Comm. of Baruch Black & Hispanic Alumni Ass'n v. Bernard M. Baruch College*, 726 F.Supp. 522 (S.D.N.Y. 1989), are even more puzzling. That case held unambiguously that "alumni groups have no standing to challenge college policies in a court of law" (id. at 525) and "in the absence of any other factors, it is apparent that, upon graduation, one may no longer look to one's alma mater for other than such things as a transcript of grades as needed." (*Id.* at 523.)

Plaintiffs argue that this shows a duty to "verify grades and academic achievement" (Plaintiffs' Response, par. 4.) <u>But the First Amended Complaint does *not* allege – for good reason – that Wesleyan does *not* perform these tasks for Wesleyan Law alumni</u>. The Court will recall the Wesleyan Defendants pointing out that the First Amended Complaint only insinuates that the phantom entity it calls "the Law School" fails to maintain records when it states at (misnumbered) Paragraph 132(b) on page 45: "Plaintiffs also reasonably believed, based on industry practices of higher education, that the Law School would maintain records of its graduates so potential employers and clients can verify that they attended a law school that has not failed[.]" This is not an allegation against Wesleyan; indeed, as Wesleyan's Motion has argued, Plaintiffs have concocted the imaginary construct they call "the Law School" to avoid making allegations they know to be untrue against a real Defendant, especially Wesleyan. In any event, Plaintiffs' response cannot distinguish *Baruch* on the grounds that it indicates universities have a particular duty that Plaintiffs have not accused Wesleyan of breaching.

Plaintiffs also argue that in *Baruch* "there are no promises made by the school to its alumni." (Plaintiffs' Response, par. 7.) This does not distinguish the case, because, once again, the First Amended Complaint identifies no promise to alumni that was breached by the Wesleyan

Defendants. To be sure, the First Amended Complaint does identify "promises" such as the one found in paragraph 181: "TWU [Wesleyan] promised to issue ABA-accredited law degrees to plaintiffs." But that promise was kept. Although there is no such thing as an "ABA-accredited law degree," the degree Plaintiffs possess was issued by an ABA-accredited institution, and the First Amended Complaint does not allege otherwise. (*See also* par. 176: "TWU's implied promise that, as an ABA-accredited institution, TWU would confer degrees that would continue to be valid in the future" – another TWU promise not alleged to have broken.) *Baruch* stands as powerful authority for dismissal.

Plaintiffs' critique of *Steeneck v. University of Bridgeport,* 1994 Conn. Super. LEXIS 2112, **20-21 (Conn. Super. Ct. 1994) (Plaintiffs' Response, par. 8), in which plaintiffs objected to the decline in academic standing they believed would result from the acquisition of their alma matter – closely analogous to Plaintiffs' claims here – relies solely on their failed distinguishing of *Baruch.* Plaintiffs' attack on *Steeneck* thus disappears.

Finally, Plaintiffs accuse the Wesleyan Defendants of an inappropriate emphasis on "certain phrases and characterizations" in *Krause v. Case W. Reserve Univ.*, 1996 Ohio App. LEXIS 5771, *9 (Ohio Ct. App., Cuyahoga County 1996) (Plaintiffs' Response, par. 9), where the court wrote that plaintiff

> had no post-graduate contract or relationship with CWRU. The purported basis for CWRU's liability for these events is the claim that CWRU had some kind of unspecified special responsibility to protect its graduates, subsequent to receipt of their medical school diplomas. As a matter of law, there is no responsibility on the part of a medical school to protect its alumnae.

Plaintiffs fail to illuminate the portions of *Krause* that would point to an interpretation of this passage that is not destructive of their case. The First Amended Complaint repeatedly alleges that Wesleyan has a "special" responsibility to protect its graduates (*see* First Amended Complaint, pars. 117, 132, 212, 228 ("special relationship")), but *Krause* says: No, it doesn't.

4

Plaintiffs' Response fails to offer a scintilla of legal support for the First Amended Complaint, and Plaintiffs' half-hearted attempt at distinguishing four of the Wesleyan Defendants' many precedents is a nullity.

### III.   THE WESLEYAN DEFENDANTS' AUTHORITIES SPOTLIGHT PLAINTIFFS' FATAL ERRORS.

The foregoing cases confirm the principle that specific legal duties cannot arise out of some vague unilateral wish to "validate" the "value," "integrity," "quality," or "credibility" of a degree. Plaintiffs' refusal to acknowledge this dooms each of their Complaints.

As the weight of authority presses down on Plaintiffs, with each new filing their phrasing becomes more desperate. The belief that animates this lawsuit is now found in Paragraph 5 of Plaintiffs' Response:

> None of the cases nor [sic] reasoning provided by defendant address the impact of promises made to plaintiffs by TMU and TWU during the acquisition process, or even deny that the new school has been given the name that TWU Defendants stated it would be called. TWU appears to take the position it can lie to stakeholders, depend on their support in the acquiescence and sale of the Law School, and then simply ignore those promises.

This central passage of Plaintiffs' Response errs in every imaginable respect:

**The First Amended Complaint Does Not Allege That the Wesleyan Defendants Made Promises to Plaintiffs During the Acquisition Process.** The First Amended Complaint does not characterize any statement attributed to Wesleyan or President Slabach – there are almost none – in connection with the acquisition process (or in any other connection) as a promise, or that it was made to Plaintiffs.

**The First Amended Complaint Does Not Allege that Any Statements Made by the Wesleyan Defendants Were "Lies to Stakeholders."** The only "lie" alleged in the First Amended Complaint is charged against Texas A&M. (Par. 204.) More critically, Plaintiffs are not "stakeholders" in Wesleyan's decision to sell its law school assets or the process it employed to do so. That is the meaning of the cases cited in

Wesleyan's Motion, including those above that Plaintiffs' Response fails to distinguish. Plaintiffs' allegation to the contrary is not only a legal conclusion not entitled to credit on a Rule 12(b)(6) motion, it's a demonstrably wrong legal conclusion. Plaintiffs repeat it in Paragraph 11 when they attempt to wish away Wesleyan's authorities by stating that "none of them include allegations that the defendant schools made statements later shown to be wholly false." (False; see *Brzica*.) The First Amended Complaint does not allege that any statements directed to Plaintiffs by Wesleyan were false.

**The First Amended Complaint Does Not Allege That the Wesleyan Defendants "Depended on [Plaintiffs'] Support in the Acquiescence [*sic*] and Sale of the Law School."** It would have been absurd for the Wesleyan Defendants to have done so, since Plaintiffs – almost all of whom are alleged to have been absent from Wesleyan for years and even decades – had no right to be heard, no seat at the table, in the decision to sell or the means to its completion. Again, this is the holding of the cases cited by the Wesleyan Defendants. And in fact the First Amended Complaint does not allege that Plaintiffs' support or opposition to the asset sale was a factor in Wesleyan's decision or negotiations.[2] Nor is Plaintiffs' "support" or "acquiescence" *vel non* an element of any of their causes of action.

## IV.   THE REMAINDER OF PLAINTIFFS' RESPONSE MISCHARACTERIZES THE FIRST AMENDED COMPLAINT AND OFFERS NO RESISTANCE TO DISMISSAL.

As noted, the First Amended Complaint does not allege that Wesleyan does not provide transcripts and other proofs of attendance upon request to graduates of Texas Wesleyan School of Law – for the very most obvious reason. They state in Paragraph 117 (and repeat in

---

[2]   Plaintiffs allege in Paragraph 115 that "[t]hroughout the acquisition process, the Pre-Acquisition Alumni have been told that the Law School desired continued input and support from them for the Law School." This passive-voice construction, in which Plaintiffs again invoke the nonexistent "Law School," is not an allegation against the Wesleyan Defendants, nor does it imply that Wesleyan was "depending" on Plaintiffs' support to achieve a successful transaction. Paragraph 197 ("Plaintiffs supported the approval process with accrediting agencies and did not oppose the acquisition of the Law School") is not alleged against the Wesleyan Defendants.

Paragraph 132(b) on page 45) that "Plaintiffs also reasonably believed, based on industry practices of higher education, that the Law School would maintain records of its graduates[.]" That's not an allegation that Wesleyan doesn't maintain records and provide transcripts, although the phantom "Law School" makes another appearance.

But faced with the clouds gathering over the First Amended Complaint, Plaintiffs appear change their tune in Plaintiffs' Response: They now maintain that the case is <u>entirely</u> about transcripts and graduation records:

> <u>Paragraph 10</u>: "While some observers may believe that plaintiffs seek a law degree from the 'newly minted' TAMU School of law, Plaintiffs seek only the assurance that they can validate their degrees and transcripts."
>
> <u>Paragraph 10</u>: "Plaintiffs' claims concern the validation of degrees, rather than quality."
>
> <u>Paragraph 14</u>: "However, the TWU Defendants then proceed to spend the rest of their Brief arguing that alumni have no standing to complain about any action of their alma mater and that colleges have no duties, leaving plaintiffs with the question of whether TWU Defendants agree that a college has a duty to provide replacement degrees and transcripts, and if so, from where does that duty come?"
> <u>Paragraph 19</u>: "Does TWU have a duty to provide transcripts, and, if so, is that duty met if those transcripts are created only when those desiring a transcript appear in person on TWU's Fort Worth campus on the first Tuesday of each month, or must TWU provide transcripts in some commercially viable way, and why? This suit will answer those questions."

None of this bears any relationship to the First Amended Complaint.

<u>First</u>: Despite the dramatic insinuations, Plaintiffs <u>still</u> don't say that Wesleyan doesn't provide transcripts and confirmation of graduation to alumni. <u>Second</u>: The First Amended Complaint <u>seeks no relief against Wesleyan</u> relating to "validation of degrees and transcripts" as the foregoing Paragraph 10 of Plaintiffs' Response suggests, but does – contrary to that same Paragraph – ask for new A&M Law degrees and complain that the Wesleyan degree has been devalued. (First Amended Complaint, pars. 188 ("diminished value of degrees"), 224 ("reissuance of diplomas").) <u>Third</u>: Federal suits don't exist to answer Plaintiffs' abstract questions, but to determine whether a defendants are liable to plaintiffs under recognized causes

of action and proven allegations supporting them.   <u>Fourth</u>:   While Wesleyan is under no obligation to respond to Plaintiffs' bizarre questions (Wesleyan has no idea what the "first Tuesday of each month" business is about), it is constrained to point out that it has already answered these transcript questions by citing *Baruch* and *Steeneck*, which recognize an informal obligation to provide transcripts.

But what really knocks the heart out of Plaintiffs' hazy attempts to imply that Wesleyan doesn't provide transcripts are their <u>admissions that it does</u>:

> TWU Defendants appear to argue that as long as a Pre-Acquisition Graduate can obtain a transcript from TWU, irrespective of the ability for a fast-moving employment agency or student loan financier to quickly validate academic achievement, plaintiffs should not even have the opportunity to establish the extent of their damages and seek a remedy for their damages.   [Plaintiffs' Response, par. 13.]

So Plaintiffs' Response now implies that Wesleyan <u>does</u> supply transcripts.   But not quickly enough to suit "fast-moving" third parties?   Again – putting aside the rank absurdity of this claim in a federal class action – this claim is nowhere found in the First Amended Complaint.   But it's even <u>more</u> than an implication – Plaintiffs <u>admit</u> they can get transcripts:

> As further support to continue this case, there is no reason to believe that TAMU will <u>continue</u> to support a link on its website that leads to TWU's site so that the Pre-Acquisition Graduates who naturally go to the TAMU School of Law site to obtain a transcript will be directed to the entity that (<u>currently</u>) will provide one. [Plaintiffs' Response, par. 17; emphases supplied.]

There it is.   Not only does Wesleyan provide transcripts through its own website, A&M Law School's site directs graduates to it.   Plaintiffs' defense of the First Amended Complaint against the Wesleyan Defendants devolves into a conclusory and wholly implausible speculation that Wesleyan may not supply transcripts in the future.

Another attempt to avoid the allegations of the First Amended Complaint:   "Plaintiffs are not suing TWU for its failure to keep them in mind during negotiations, though that would have solved the problem."   (Plaintiffs' Response at 23.)   False.   That is <u>exactly</u> what the "negligence"

count charges.  *See* Paragraph 239 of the First amended Complaint in the negligence count against the Wesleyan Defendants:

> A person of reasonable care would have ensured that TAMU accepted a duty to validate the degrees of Pre-Acquisition Graduates or provide replacement diplomas. This easily could have been effected by including an additional provision in the Asset Purchase Agreement. [First Amended Complaint, par. 239.]

It's nonsense on its face; little wonder that Plaintiffs disavow it in their Response.

Finally, Plaintiffs repeatedly describe the First Amended Complaint as alleging (or imply that it alleges) that the Wesleyan Defendants made promises to them and misled or lied to them during the acquisition process.  (Plaintiffs' Response, pars. 5, 7, 11, 12, 23, 24, 30.)  But Plaintiffs' Response fails to name, much less cite the First Amended Complaint, to a single one.

## Conclusion

Plaintiffs' case is an effort to transform an informal relationship between a graduate and his or her alma mater into one based on contract and tort – one without identifiable duties, at that. But their new and extravagant charges of wrongdoing against the Wesleyan Defendants in Plaintiffs' Response cannot amend the charge-starved, authority-bare First Amended Complaint.

Plaintiffs' Response betrays a misunderstanding about Plaintiffs' burden on this Rule 12(b)(6) motion:

> Defendants seek to eliminate this suit before allowing discovery or any development of the case <u>to determine the contours of TWU Defendants' duties</u>; plaintiffs respond that a motion to dismiss is inappropriate at this point; this suit should be allowed to proceed to develop the claims and damages, as <u>plaintiffs have a right to determine what loyalty TWU has to its alumni</u>.  [Plaintiffs' Response, par. 15; emphases supplied.]

With due respect to Plaintiffs, legally cognizable duties must be alleged in the complaint itself if it is to be viable – their "contours" (whatever "duty contours" might be) are not "determined" through discovery, nor would any determination of Wesleyan's "loyalty" to its alumni have the barest relevance to any of the causes of action alleged.  It is untrue that "[t]o dismiss the case before discovery is to take the disputed facts as defendants view them" (*id.*, par. 29), as

9

Wesleyan's Motion is not about "disputed facts," but the facts as alleged by Plaintiffs that are not mere conclusions, implausible, or beyond the bounds of common sense as required by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (2009). Wesleyan's Motion hews to those facts. Plaintiffs' problem is that even crediting their "facts" that pass the *Iqbal* test as undisputed does not satisfy the elements of any of their causes of action against the Wesleyan Defendants.

Accordingly:   Texas Wesleyan University and its President Frederick G. Slabach respectfully request that the Court enter an order (1) dismissing the "First Amended Complaint – Class Action" (ECF 19) against them with prejudice and without leave to refile as to them; (2) denying "Plaintiffs' Motion for Leave to Amend Complaint" (ECF 36); (3) denying Plaintiffs' "Motion to Certify Class Action" (ECF 20) as moot; and (4) granting them other relief to which they may be entitled.

**DATE:  January 11, 2016**

Respectfully submitted,

ROBERT A. BRAGALONE
State Bar No. 02855830
**GORDON & REES LLP**
2100 Ross Avenue, Suite 2800
Dallas, Texas 75201
214-231-4660 Telephone
214-461-4053 Facsimile

**LARS L. BERG**
State Bar No. 00787072
**KELLY HART & HALLMAN LLP**
201 Main Street, Suite 2500
Fort Worth, TX 76102
817-332-2500 Phone
817-878-9280 Facsimile

## CERTIFICATE OF SERVICE

This is to certify that on this 11th day of January, 2016, a true and correct copy of the

foregoing document was served upon the following counsel of record as follows:

*Via Email wnorred@norredlaw.com*
Warren V. Norred
NORRED LAW, PLLC
200 E. Abram, Suite 300
Arlington, Texas 76010
*Attorney for Plaintiffs*

*Via Email drew.harris@texasattorneygeneral.gov*
Drew L. Harris
Assistant Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
*Attorney for State Defendants*

Lars L. Berg